73 So.2d 590 (1954)
EDWARDS
v.
S. & R. GAS CO., Inc.
No. 8151.
Court of Appeal of Louisiana, Second Circuit.
June 25, 1954.
Rehearing Denied July 16, 1954.
Bethard & Bethard, Coushatta, for appellant.
Campbell & Campbell, Minden, for appellee.
GLADNEY, Judge.
This appeal is from a judgment in favor of plaintiff for the value of a 250 gallon butane gas tank and its contents allegedly unlawfully removed by the defendant. Appellant's counsel admit the facts here presented cannot be distinguished from the facts presented in Holicer Gas Company, Inc. v. Wilson, La.App., 1950, 45 So.2d 96, in which decision we held adversely to the contentions of the appellant herein, but counsel request that we re-examine the correctness of our views and conclusions expressed therein. The court a quo followed our decision in the Holicer case.
It is argued the Holicer decision is erroneous because a movable cannot become immovable by destination unless the ownership of both the movable and immovable are vested in one and the same person. A second issue contended for is that under art. 508 of the LSA-Civil Code the removal of the tank was legally permissible. The first contention was thoroughly discussed and passed upon in the Holicer opinion. The application of art. 508 does not appear to have been raised or considered therein.
*591 The facts here involved are not in dispute. Leon W. Gray was the owner of a residence or fishing camp situated on a lot fronting Lake Bisteneau. In 1950 he applied to the defendant for butane gas service, the premises being already piped for heating and cooking purposes. A written contract was entered into between the parties, but was not recorded, wherein defendant agreed to lease for a stipulated annual rental a 250 gallon butane tank, make the necessary connections, and supply butane gas for a stated price. The tank was installed and service commenced.
The subject tank was some seven or eight feet long and about thirty inches in diameter. It was placed on concrete blocks 8 × 8 × 24 inches, brought along with the tank for that purpose, which blocks were laid on top of the ground without the necessity of digging. The tank was equipped with lugs or "ears" to support the tank on the blocks. The installation was from ten to twenty feet from the house. Gas from the tank passed through a ¾ inch copper pipe to the house. In removing the tank it could be disconnected by taking a wrench and backing off a nut fitted to the copper connection.
On March 17, 1952, the plaintiff Edwards purchased the realty with improvements from Gray. The deed did not mention the tank. After this sale defendant made repeated efforts to get Edwards to effect a similar agreement for gas service as that had with Gray, but plaintiff did nothing. Thereupon defendant removed the tank which contained one hundred gallons of butane gas and sent a check for the value of the gas to Edwards but the check was not accepted. Edwards, claiming the tank to have become immobilized and title thereto accompanied the realty, then filed this action for $915 damages allegedly for the value of the tank and contents, for loss of the use of the residence, and for humiliation, inconvenience, etc. The judgment awarded $295.30 for the first mentioned item.
A careful review of our opinion in the Holicer case has persuaded us we were in error in rejecting the justiciable issue that a movable cannot become an immovable by destination unless the ownership of both the movable and the immovable are vested in one and the same person. In the Holicer case it was said [45 So.2d 100]:
"The gas tank was attached to a pipeline system which furnished fuel to the buildings on the property, and, consequently, the conclusion is inescapable that this connection or attachment was for the `use or convenience' of the buildings. We do not think that the method of connection is of any considerable importance, and the fact that such connection was by means of a flexible copper pipe is no less significant than if such connection had been made by use of several rigid cast iron pipes, for example.
"But it is zealously urged on behalf of plaintiff that the tank was not connected or attached to the building by the owner, under the requirements of Article 467, nor was it actually placed upon the land by the owner under the requirement of Article 468. We think this contention is without merit. We cannot construe the codal articles as being so narrow and circumscribing in intent and purpose as to require that an owner of realty himself physically perform the actual transportation, placing, fixing, attachment and connection of a structure or fixture in order to meet the codal provision. And, it is further to be observed that Article 468 does not require that the owner place a `thing' upon a tract of land, but, on the contrary, declares `things which the owner of a tract of land has placed upon it * * *.' The use of the word `has' can only be interpreted in the sense of procurement or direction. In the instant case according to the testimony of plaintiff's witness Prather, quoted supra, the then owner of the property, Booras, directed and ordered the gas tank to be placed on the property."
Article 467 and Article 468 of the LSA-Civil Code read:

*592 Article 467:
"Wire screens, water pipes, gas pipes, sewerage pipes, heating pipes, radiators, electric wires, electric and gas lighting fixtures, bathtubs, lavatories, closets, sinks, gasplants, meters and electric light plants, heating plants and furnaces, when actually connected with or attached to the building by the owner for the use or convenience of the building are immovable by their nature." (Emphasis supplied.)
Article 468:
"Things which the owner of a tract of land has placed upon it for its service and improvement are immovable by destination. (Emphasis supplied.)
"Thus the following things are immovable by destination when they have been placed by the owner for the service and improvement of a tract of land, to wit:
"Cattle intended for cultivation.
"Implements of husbandry.
"Seeds, plants, fodder, and manure.
"Pigeons in a pigeon house.
"Beehives.
"Mills, kettles, alembics, vats, and other machinery made use of in carrying on the plantation works.
"The utensils necessary for working cotton, and sawmills, taffia distilleries, sugar refineries and other manufactures.
"All such movables as the owner has attached permanently to the tenement or to the building, are likewise immovable by destination."
Our difference from the author of the Holicer opinion is first, the tank was not truly an accessory to the fundus; second, it was not employed in the service of the fundus, but in the service of the person who owned the fundus; and third, it was not placed on the fundus by the owner of both the fundus and the movable. (We use the word fundus as accepted in our jurisprudence to mean a tract of land with buildings. See Morton Trust Co. v. American Salt Co., 5 Cir., 1906, 149 F. 540.
The Code articles make two classifications of movables which become immobilized: those permanently attached to the building by plaster or mortar, and those which are essential to the use or service of the building or tenement or fundus. Judge Westerfield in Kelieher v. Gravois, La. App., 1946, 26 So.2d 304, 306, quoted from Baudry-Lacantinerie, Droit Civil, Des Biens (Paris Ed.1890), Vol. 5, p. 59, as follows:
"`"* * * All the objects attached to a fundus by the owner for its service and exploitation are by that fact alone immovables by destination, whether they are placed there forever or not. * * * All movable objects also become immovables by destination, which an owner has attached to his fundus forever in another interest (the author meaning an interest other than the service and exploitation of the fundus); such, for instance, as a purpose of utility to or ornamentation of the fundus. Therefore, perpetuity does not seem necessary except when the immobilization takes place in an interest other than the agricultural or industrial benefit of the fundus."
"`The same author, same work and volume (page 56) states the essentials of immobilization to be:
"`"(1) That the movable was placed on a fundus, that is to say, an immovable by nature (either land or a building); for the movable can only become an immovable by destination as being an accessory to the fundus. (2) That the movable was placed there in the interest of the fundus, that is to say, for its service, its exploitation, its utility or its ornament. (3) That it was placed there by the owner of the fundus. Immobilization by destination necessarily supposes the act of the owner. It could not result from the act of a lessee, a renter, or even a usufructuary.

*593 The reason is that immobilization by destination takes place in the interest of the fundus and the owner is the sole representative of that interest."
"`Planiol, in the work and volume cited, supra, at page 703, gives a test, which is that the movable in order to become immobilized must be employed in the service of the fundus, and not in the service of the person who owns the fundus. Thus, saddle and carriage horses on a plantation, used for the pleasure and convenience of the person of the owner, are not immovables by destination, whereas a plantation horse owned by the owner of the plantation, and used by the overseer to superintend the plantation work, would unquestionably be an immovable by destination. Thus, again, in France, the horse used by a brewer to turn a mill or other machinery in the brewery is an immovable by destination; but, on the other hand, the horse used outside of the brewery to convey beer to the shopkeeper is not.'"
In Kelieher v. Gravois, the vendor of an apartment building sought to recover the value of Venetian blinds which the purchaser refused to permit the removal of on the ground they were immovable by destination. The court concluded:
"We believe the same may be said of the Venetian blinds, for it would appear that they are intended primarily for the use of the occupant of the building and not for the service or improvement of the building, therefore, they did not pass with the realty and the former owner of the property, Mrs. Ruth Kelieher, is entitled to their possession." (Emphasis supplied.)
The subject tank in the Holicer decision was as much detached from the dwelling as possible. It was distant from the building, and removable from the soil by lifting after unscrewing a nut. No more trouble is encountered than in the removal of a gas heater or Venetian blinds. It was not an accessory to the fundus. The house and the soil were untouched, and certainly left in the same condition as before it was placed on the premises.
We think the tank, as were the Venetian blinds in Kelieher v. Gravois, supra, was for the service of the owner rather than in the interest of the fundus.
In effect we said in the Holicer opinion immobilization does not presuppose the act of the owner of the movable. It is observed that Baudry-Lacantinerie, quoted above, says that immobilization necessarily supposes the act of an owner and that it cannot result from the act of a lessee, a renter or even a usufructuary. Art. 2726 of the LSA-Civil Code gives the lessee the right to remove the improvements and additions which he has made to the thing let, provided he leaves it in the state in which he received it. The article further says that if the additions have been made with lime and cement the lessor may retain them, on paying a fair price. A fortiori, it would seem where a third person owner has for accommodation rented or loaned a movable he should be permitted to remove it. We, therefore, are of the opinion that in order for immobilization to take place the owner of the fundus must have title to the movable which he dedicates to the interest of the fundus. See Buckley v. Lindsey Mercantile Company, Inc., 1927, 5 La.App. 467; Richardson v. Item Company, 1931, 172 La. 421, 134 So. 380, 381; Articles 468 and 469 of LSA-Civil Code.
In Richardson v. Item Company, Judge Odom said, 172 La. 421, 134 So. at page 381,
"Under the circumstances disclosed, the contention is not well founded. The sprinkler system was not an immovable by destination. Immovables by destination are things which are placed upon or attached to the realty by the owner, not by a third person, for its service and improvement. Civ. Code, art. 468.
"A movable becomes an immovable by destination when the owner unites it with lands, tenements, or buildings *594 which are also owned by him, with the intention that the movable shall henceforth be merged and associated with the destiny of the realty. For a movable to become an immovable by destination it must necessarily be placed upon or attached to the immovable by the owner himself. When such things are placed upon an immovable by a lessee as an improvement or addition, they remain movables, and may be carried away by him unless attached with lime and cement.
"It has twice been held by this court that a railroad laid upon the soil of another is a movable. In the case of State v. Mexican Gulf Railway Co., 3 Rob. 513, the court said: `But the Railway is not an immovable, either by nature or destination, if the soil over which it is laid belongs to another. The rails, therefore, did not become immovable by being laid down.'
"In Woodward v. [American Exposition] Railway Co., 39 La.Ann. 566, 2 So. 413, 414, the court said: `As the railroad was constructed on the soil of another, it was movable property, and as such governed by the law regulating pledges on movables.'
"Counsel likens this sprinkler system to wire screens, water, gas, sewerage, and heating pipes, radiators and the like mentioned in article 467 of the Civil Code, as amended by Act No. 51 of 1912, and cites, in support of his contention that it could not be lawfully removed from the premises, the case of Scott v. Brennan, 161 La. 1017, 109 So. 822, 48 A.L.R. 1143.
"Neither the article of the Code nor the case cited has any bearing upon the issue involved in the case at bar. The article of the Code provides that wire screens, pipes, radiators, bathtubs, and the like `when actually connected with or attached to the building by the owner for the use or convenience of the building are immovable by their nature.'" (Italics ours.)
A further exception to the accession of another's property by operation of law may arise under Article 504 of the LSA-Civil Code which says all that which becomes united to or incorporated with the property, belongs to the owner of such property, subject to certain stated rules. One of these is Article 508, which provides:
"When plantations, constructions and works have been made by a third person, and with such person's own materials, the owner of the soil has a right to keep them or to compel this person to take away or demolish the same.
"If the owner requires the demolition of such works, they shall be demolished at the expense of the person who erected them, without any compensation; such person may even be sentenced to pay damages, if the case require it, for the prejudice which the owner of the soil may have sustained.
"If the owner keeps the works, he owes to the owner of the materials nothing but the reimbursement of their value and of the price of workmanship, without any regard to the greater or less value which the soil may have acquired thereby.
"Nevertheless, if the plantations, edifices or works have been made by a third person evicted, but not sentenced to make restitution of the fruits, because such person possessed bona fide, the owner shall not have a right to demand the demolition of the works, plantations or edifices, but he shall have his choice either to reimburse the value of the materials and the price of workmanship, or to reimburse a sum equal to the enhanced value of the soil."
An incident to the last paragraph of the above Codal article is that the owner of the real estate shall elect whether he will keep the useful improvement and *595 reimburse the value thereof, or if he fails or refuses to take this action the third person may, if practicable, remove his property. Conceding arguendo the improvement has become immobilized can Edwards retain it without paying its value? We think not because Article 508 in such an instance contemplates the owner of the property shall not receive title to the thing immobilized until he gives compensation. Certainly it cannot be said that Edwards acquired title because until Gray or Edwards elected to keep the property the title under Article 508 remained in the third person. Gray, having no title, passed none to Edwards and Edwards, having not elected to become the owner of the tank before it was removed, acquired no title. We think, therefore, defendant was within its rights in removing the tank.
In Folse v. Loreauville Sugar Factory, Inc., 1934, 156 So. 667, 670, Judge LeBlanc, as the author of the opinion, said:
"Another important feature, however, which differentiates this case from that of Monroe Automobile & Supply Co. v. Cole, supra [6 La.App. 337], lies in the fact that the improvements in the latter case were placed on the property by the owner, whereas here they were placed by third persons on the property of another. Therefore it cannot even be contended (which defendants, however, do not) that the improvements have become immovables by destination, because under article 468, R.C.C., things become immobilized by destination only when placed on a tract of land for its service and improvement, by the owner himself, or when he (the owner) has attached them permanently to the tenement or to the building."
This decision being in conflict with Holicer Gas Company, Inc. v. Wilson, the latter is overruled.
It follows from our findings herein that the judgment should be reduced to the sum of $15.30, the value of the butane in the tank which sum defendant offered plaintiff in payment and he refused. It is therefore, ordered that the judgment from which appealed be and it is hereby modified by reducing the amount awarded plaintiff to the sum of $15.30, and as so amended, it is affirmed. Appellee is cast for costs, including costs of the appeal.
HARDY, Judge (dissenting).
As the author of the opinion in the Holicer Gas Company, Inc. v. Wilson, La. App., 45 So.2d 96, in which case writs were refused by the Supreme Court May 29, 1950, it would be unusual, indeed, if I did not feel constrained to dissent from the majority opinion in the instant case which specifically overrules the Holicer case.
In view of the fact that the opinion not only makes no effort to distinguish the facts involved in the two cases, but appears to concede that the facts are identical, I see no need for presentation of any detailed reasons in support of this dissent. The opinion in the Holicer case expressed the views of this court at the time, and I remain unchanged in my belief in its soundness.
The comment in the majority opinion indulges in what I believe to be somewhat specious reasoning in attempting to liken the gas tank involved in the Holicer case with a gas heater or Venetian blinds. It might, as persuasively, be argued that a bath tub should not be an immovable because it can be lifted from its place after disconnecting a water pipe and a drain pipe
I further strongly and emphatically disagree with the conclusion that a gas system for use in furnishing fuel for cooking and heating in a dwelling house is designed for the service of the owner and not for the service and improvement of the building. Pursuing the same analogy as above used, we might say that a bath tub is intended for the service and convenience of the owner and his guests rather than for the service and improvement of the building.
I respectfully dissent.