Heirs of María Echegaray widow of Viera, Plaintiffs and Appellants, *v.* Esso Standard Oil Co. (P.R.), Defendant and Appellee.

No. 387. Decided March 21, 1963.

*José Trías Monge* and *R. H. Francis* for appellants. *Beverley, Castro & Rodríguez Lebrón,* and *José Carbia Miranda* for appellee.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

The question for decision in this case is whether or not appellants, owners of a three-story building in which a service station is installed, may claim and retain by right of accession, upon payment of the corresponding indemnity, a tank installed in that real property by appellee under a contract entered into by the latter and Esteban Ríos, lessee of that station. Appellee had reserved under the contract the title to the tank in question and the right to remove it, which conditions were never communicated by lessee to appellants (Tr. Ev. 17 and 35). Appellants had authorized the installation of the tank in their property, buried under the concrete floor of the station, after warning the lessee "not to remove the tank from that place." (Tr. Ev. 21–23.)

We are of the opinion that appellants may retain the tank upon payment of the value of $1,250 agreed upon by the parties. (Tr. Ev. 71.) For a better understanding of the question involved, the following is a resume of the facts of the case and of the pertinent order of the trial court.

For more than 20 years appellants have devoted the main floor of their three-story building to the operation of a service station, having leased the same from time to time to different persons. The last lessee, who was also the lessee at the time of the facts which gave rise to the present controversy, was Esteban Ríos. At the time the business was leased to Ríos, the station had only one tank for storing gasoline. The

ownership of this tank, installed by appellee about 20 years ago, is not in issue in this appeal, appellee having already accepted the corresponding indemnity by stipulation of May 10, 1960. When high octane gasoline started to be used in Puerto Rico, Ríos requested authorization from appellants to install a second tank. Appellants refused to grant such authorization alleging that their building would be exposed to risk by another excavation. Since he could only sell gasoline of only one kind, Ríos' business waned to the point that he was unable to pay the lease rental to appellants. In view of this situation, appellants decided to assume the risks of the installation of a second tank, but warned Díaz not to remove the same for they were not willing to expose the building for the second time to the same risks. Appellee company installed the tank under a fixture loan contract with Ríos, who bound himself to return the fixtures to appellee upon the termination of their business relationship. Appellants were not a party to that contract.

The tank was buried in the ground, with a concrete top, within four columns on which the building in question stands, which is a three-story concrete structure. Some of the columns are about eight inches away from the side of the tank.

On November 24, 1959, Ríos informed appellee of his interest to terminate his business relationship with it. Appellee advised Ríos that in such event it would remove the two gasoline tanks existing in his business. In view of such possibility, appellants filed an action of accession on December 10, 1959. Appellee company attempted, nonetheless, to remove the tanks, appellants having been forced to apply for a restraining order, which was issued. The aforementioned stipulation, limiting the controversy to the rights of the parties respecting the recently constructed tank, was made after the petition for a restraining order was filed.

The case having been heard on the merits, the trial court held that accession did not lie for the following reasons:

(1) The tank involved herein retains its nature of movable property, since it is not real property by incorporation nor by destination.

(2) The tank is not a structure and is removable without injuring the real property or the tank itself.

(3) The right of accession accrues from the fact of having been built without a contract, in good or bad faith, on another's land, wherefore since there is a contract (between appellee and Ríos) the relations between the parties are governed by it, that the said contract discloses the intention of the parties to consider the tank as movable and removable property, and this element of intention is decisive in determining the movable or immovable character of an object, according to the holding in *José Romaguera e Hijos* v. *Court of Tax Appeals*, 61 P.R.R. 110 (1942).

The trial court concluded that the evidence established that the tank retains its movable character and may be removed from the property without detriment or injury to the building, wherefore accession did not lie.[1]

Feeling aggrieved by such decision, appellants have filed the present petition for review in this Court alleging that the trial court erred in considering necessary to pass upon the movable or immovable character of the tank, in ruling that the tank did not cease to be movable property, and that the element of intention is determinative of the movable or immovable character of an object.

For the purpose of deciding the problem of accession in this case, and in the absence of a covenant or circumstances justifying otherwise, we do not feel constrained to pass on the movable or immovable nature of the tank in question. Nor do we need to decide the case on the basis that appellee's rights are equivalent to the lessee's, for although it is true that the property in question was owned by a lessee, who was

---

[1] For a critical analysis of this opinion, see note published in 30 *Revista Jurídica de la Universidad de Puerto Rico* 95.

Ríos, at the time appellee contracted with the latter for the installation of the tank on the property, it is no less true that appellee was the one who buried its own tank in the property in question. Such work was done in good faith, since the owners of the property, namely, the appellants who were the lessors with respect to Ríos, had granted authorization to perform such work. Of course, appellee never was a *possessor* of the real property in question. This is so because we find the solution to the question raised, independently of the preceding considerations, in the study and application of §§ 287, 294, 297 and 382 of the Civil Code (31 L.P.R.A. §§ 1131, 1161, 1164 and 1468), which provide as follows:

"Section 1131.

The ownership of property, whether movable or immovable, carries with it the right, by accession, to everything which is produced thereby, or which is united thereto or incorporated therewith, either naturally or artificially."

"Section 1161.

Whatever is built, planted or sown on another's land, and the improvements or repairs made thereon, belong to the owner thereof, subject to what is prescribed in the following sections."

"Section 1164.

The owner of the land which has been built upon, sown, or planted in good faith, has the right to appropriate as his own the work, sowing or planting, by previously paying the indemnity specified in sections 1468 and 1469 of this title, or to oblige the person who has built or planted to pay him the value of the land, and the person who sowed, to pay the corresponding rent."

"Section 1468.

Necessary expenses are refunded to every possessor; but only the possessor in good faith may retain a thing until such expenses are made good to him.

Useful expenses are refunded to the possessor in good faith with the same right of retention, it being at the option of the party who has defeated him in his possession to refund the amount of the expenses or to pay the increase in the value of the thing in consequence of such expenses."

■ We must first point out that, in order that accession may lie, these provisions do not expressly require that the object attached to an immovable must have acquired for such reason the character of immovable, nor that it be attached to the soil "in such a way that it can not be separated from it without breaking the matter or causing injury to the object," as provided in § 263(3) of the Civil Code (31 L.P.R.A. § 1043) in defining immovables. Nor is it a requisite that the person who performs the work object of the accession be a possessor, as stated in VI Scaevola, *Código Civil* 580-81 (5th ed.) :

"However, the solution of the legal problem under consideration, being general in character and application, does not part from the premise that it is necessary that the owner of the materials possesses in law the property in which the latter were incorporated. If he acted in good faith, it matters not whether or not he owns the land ; in either case his duties and powers are defined by § 361 [297 of our Civil Code]. Sections 453 and 454 [382 and 383 of our Code] lay down the rule for both cases, since the indemnity provided is fair and proper in the problem involved therein, whether or not the fact of possession by the owner of the materials is present."

■ According to those provisions of our Civil Code, accession is not confined to structures of a substantial and permanent character such as buildings, dwellings, fillings, retaining walls and irrigation canals, but it covers other works and improvements such as lighting, elevators and water service, furnaces, tanks and sheds, lavatories, fountains and drinking troughs. VI Scaevola, *Código Civil* 582-83 (5th ed.) ; III Manresa, *Comentarios al Código Civil Español* 260 (7th ed.) ; III-1 Puig Peña, *Tratado de Derecho Civil Español* 129, footnote 24; Judgment of December 18, 1956 of the Supreme Court of Spain. Furthermore, those commentators admit that useful improvements "erected" on real property, but susceptible of being removed without injury to the soil, may be the object of accession. Scaevola main-

tains that the person who "erected" them in good faith on another's land may remove them (VI SCAEVOLA, *op. cit.* at 581-82), while MANRESA, who also holds the same view, adds:

"However, the spirit underlying the Code on this matter of improvements and the incorporation of the latter in the thing imposes a limitation. The Code always grants to the owner the right to retain the improvements...If, therefore, he wants to retain the improvements, the possessor can not remove them." (VI MANRESA, *op. cit.* at 317-18.)

In *Edwards* v. *S. & R. Gas Co.*, 73 So.2d 590 (La. 1954), Leon Gray, owner of a residence or fishing camp, applied to and obtained from defendant the lease of a butane gas tank which was placed by the latter on concrete blocks on top of the ground, from 10 to 20 feet from the house, connected to the latter by a three-fourths inch copper pipe which could be disconnected with a wrench. The contract, though written, was not recorded. Subsequently Gray sold the property to plaintiff together with the improvements, but the deed did not mention the tank. Defendant made efforts with plaintiff to effect a similar agreement for butane gas service as that had with Gray, and upon failure to obtain any he removed the tank and sent a check to plaintiff for the amount of the gas in the recipient. Plaintiff returned the check and claimed damages consisting in the value of the tank and contents, loss of the use of the residence, and for humiliation and inconvenience, claiming the tank to have become immobilized and title thereto accompanied by realty had passed to plaintiff. It was held, reversing the doctrine in a former case, that (a) the tank did not become immobilized because the owner of the property did not install it as required by § 468 of the Civil Code of Louisiana, nor was it attached to the property for the use thereof, but for convenience of its owner, nor was it permanently installed; and (b) under § § 504 and 508 of the Civil Code of Louisiana (the latter is similar to § 297 of our Civil Code), conceding that the tank became

immobilized, plaintiff could not keep it without paying compensation. Plaintiff did not acquire title to the tank, because until such time as Gray or plaintiff elected to keep it, the title to the tank remained in defendant and the latter removed it before plaintiff elected to become owner, and, therefore, the adjudication in the case should be limited to the value of the gas in the tank.

In Louisiana, § 508 of the Civil Code contains provisions equivalent to those of § 297 of our Code.[2]

Of course, the decision in that case conforms to the principle outlined by Scaevola that the useful improvements made in good faith on another's land may be removed by the builder. Yet, we do not agree, as being untenable, with the first ground of the preceding decision, since the movable or immovable character of the tank was not in issue nor was it necessary to assume that the tank in question had become immobilized to warrant the application of § 508 *supra. Folse* v. *Loreauville Sugar Factory*, 156 So. 667 (La. 1934), cited as authority in *Edwards*, points out, in our opinion, the correct juridical reasoning applicable to cases of this nature. There a creditor sued for collection of money

---

[2] "Art. 508. When plantations, constructions and works have been made by a third person, and with such person's own materials, the owner of the soil has a right to keep them or to compel this person to take away or demolish the same.

"If the owner requires the demolition of such works, they shall be demolished at the expense of the person who erected them, without any compensation; such person may even be sentenced to pay damages, if the case require it, for the prejudice which the owner of the soil may have sustained.

"If the owner keeps the works, he owes to the owner of the materials nothing but the reimbursement of their value and of the price of workmanship, without any regard to the greater or less value which the soil may have acquired thereby.

"Nevertheless, if the plantations, edifices or works have been made by a third person evicted, but not sentenced to make restitution of the fruits, because such person possessed bona fide, the owner shall not have a right to demand the demolition of the works, plantations or edifices, but he shall have his choice either to reimburse the value of the materials and the price of workmanship, or to reimburse a sum equal to the enhanced value of the soil."

from a company which operated a sugar factory belonging to an individual who sold it to another and the latter sold it to a corporation, including in the sale certain improvements consisting of machinery and fixtures installed in the factory by the operator. The court ruled that these improvements could be removed at nominal cost without injury to the factory. The question for decision was whether or not the sales included the improvements, since if they could be excluded by ruling that the title to such improvements remained in the operator, plaintiffs obtained a source from which to collect their credits. In holding that the sale of the factory did not transfer title to the improvements and, on the contrary, that it remained in the operator which installed them originally, the court, after ruling that the improvements in question had not been attached to the property to the point of becoming immovables, concluded that "the status of these improvements as property is governed by the provisions of article 508 of the Civil Code of Louisiana" which, as stated before, is similar to our § 297. Added the court: "That article provides [in part] that when plantations, constructions and works have been made by a third person, and with such person's own materials, the owner of the soil has a right to keep them or to compel this person to take away or demolish the same." The article prescribes the duties and obligations of the owner if he chooses to exercise his rights; and it necessarily follows that, as long as he does nothing with regard thereto, the third person who erected or made them retained title thereto.

The right of accession to the gasoline tank in the case under consideration is even more evident and strong. Unlike the situation in the two preceding cases in which the improvements had not been attached to the soil and could be easily removed without injury to the immovable where they were installed, in the instant case the tank in question was buried in the property and covered with concrete. The trial court held that the tank "could be separated from the property

without injury or detriment to the building," thereby deciding the conflict in the testimony of the parties on the matter. However, the fact is that the evidence showed that the removal of the tank entailed considerable risks because it was installed within some columns of a three-story building, near to and lower than the shoes of the columns. (Tr. Ev. 65-68 and 89.) Under circumstances apparently less dangerous, it was held in *Monroe Automobile Supply Co.* v. *Cole*, 6 La. App. 337 (1928), that the removal of a tank installed under the entrance driveway of a filling station and encased in concrete would injure the soil.

■ Appellee as well as the trial court maintains that accession does not lie in this case because the parties' intention, expressed in the contract made by Ríos and appellee under which the latter provided and installed the tank, was not to consider such facility as an immovable and removable object, and, therefore, according to the doctrine laid down by this Supreme Court in *José Romaguera e Hijos* v. *Court of Tax Appeals*, 61 P.R.R. 110 (1942), this element of intention is decisive in determining the movable or immovable character of an object. After a careful analysis of this case, we conclude that it is not applicable to the case at bar for the reasons which follow: (1) the parties to this litigation did not mention nor make any agreement as to the movable or immovable character of the tank before or after it was installed in plaintiffs' property. On the contrary, the intention on this matter of one of them was diametrically opposed to that of the other and neither one knew of the intention of the other. Moreover, even admitting that that intention is a factor to be considered, like any express agreement of the parties on the matter or circumstance which might indicate their understanding on the matter, in determining the movable or immovable character of an object, according to § 263 of the existing Civil Code (31 L.P.R.A. § 1043), we have already said that for the purpose of deciding whether or not accession is proper in cases such as

this, it is not necessary to make such a determination. (2) the molasses tanks in *Romaguera e Hijos* rested upon the land, could be dismantled and rebuilt in another place without injury or detriment to the soil or the object, which is not the existing situation of the gasoline tank in the case under consideration, as shown hereinabove; and (3) lastly, *Romaguera e Hijos* involved the collection of property tax which the Treasurer of Puerto Rico sought to levy on the molasses tanks erected on lands of The People of Puerto Rico leased to the owner of the tanks. Therefore, the question for decision was not accession but the movable or immovable character of the tanks under the provisions of § 290 of the Political Code which on the date of that case provided that "personal property shall include such machinery, vessels, instruments or implements not fixed to the building or soil." (The present text of that provision appears in 13 L.P.R.A. § 443.)

The citations from commentator MANRESA in his work *Comentarios al Código Civil Español*, Vol. III, pp. 292-93 and 289 (7th ed.), relied on by appellee in support of its theory that accession is not proper, refer to the case of one who constructs on another's land with another's materials, and, therefore, do not constitute authority in conflict with our determination that the right of accession may be successfully invoked by the owner of the soil in cases such as this.

■ Indeed, if we consider this case solely in the light of economic realities, we are unable to find that appellee suffered any substantial injury when it was recognized that juridically the right of accession is proper, since the tank in question is not a precious and irreplaceable object, nor is there any evidence that it has a sentimental value, and, on the contrary, it is an object easily replaceable in the market, so that the payment to appellee of the value thereof agreed upon by the parties is adequate indemnity. On the other hand, to permit the removal of the tank, with evident risk to the

property and to appellants' business and their lessee, does not seem socially useful.

For the reasons stated, the judgment rendered by the trial court will be reversed and another rendered instead sustaining the complaint in this case, upon payment by appellants to appellee of the sum of $1,250 as compensation, plus the costs of the litigation.