SUCESIÓN DE MARÍA ECHEGARAY VDA. DE VIERA, demandantes y recurrentes, *v.* ESSO STANDARD OIL COMPANY, (P.R.), demandada y recurrida.

*Número:* 387    *Resuelto:* 21 de marzo de 1963

*José Trías Monge* y *R. H. Francis,* abogados de los recurrentes; *Beverley, Castro & Rodríguez Lebrón* y *José Carbia Miranda,* abogados de la recurrida.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

La cuestión a resolver en este caso es si los recurrentes, dueños de un edificio de tres pisos en el primero de los cuales radica una estación de gasolina, pueden o no reclamar y retener por derecho de accesión, previa la indemnización correspondiente, un tanque instalado en dicho inmueble por la recurrida con arreglo a un contrato celebrado por ésta y Esteban Ríos, arrendatario de la referida estación. En dicho contrato, la recurrida se había reservado el título del tanque en cuestión y el derecho de removerlo, condiciones que nunca fueron comunicadas por el arrendatario a los recurrentes. (T.E. págs. 17 y 35.) Los recurrentes habían autorizado la instalación del tanque en su propiedad, soterrado bajo el piso de concreto de la estación, bajo apercibimiento al arrendata-

rio "que no se removiera ese tanque de ese sitio". (T.E., págs. 21–23.)

Creemos que los recurrentes pueden retener dicho tanque, previo pago de su valor, convenido por las partes en la suma de $1,250. (T.E., pág. 71.) Para un mejor entendimiento de la cuestión envuelta hacemos a continuación un resumen de los hechos del caso y de la resolución del tribunal de instancia con respecto al mismo.

Los recurrentes han destinado desde hace más de veinte años la planta baja de su edificio de tres plantas a la explotación de dicho negocio de estación de servicio, habiéndolo arrendado de cuando en cuando a diferentes personas. El último arrendatario, quien también lo era para el tiempo de los hechos que motivaron la actual controversia, lo era el Sr. Esteban Ríos. Al arrendársele el negocio al Sr. Ríos, la estación contaba con sólo un tanque para el almacenaje de gasolina. La propiedad de este tanque, instalado por la recurrida hará unos veinte años, no está en discusión en el presente recurso, habiendo ya la recurrida aceptado la indemnización correspondiente mediante estipulación de 10 de mayo de 1960. Al comenzar a utilizarse en Puerto Rico la gasolina de alto octanaje, Ríos solicitó permiso de los recurrentes para la instalación de un segundo tanque. Los recurrentes se negaron a conceder tal autorización debido al peligro a que se exponía su edificio si se hacía otra excavación. Al poder vender únicamente gasolina de un solo tipo el negocio de Ríos mermó al extremo de no poder pagar a los recurrentes el canon de arrendamiento. En vista de esta situación los recurrentes decidieron asumir los riesgos de la instalación del segundo tanque, pero apercibieron a Ríos de que no se volviera a sacar, ya que no estaban dispuestos a someter el edificio por segunda vez a los mismos riesgos. El tanque se instaló por la compañía recurrida en virtud de un contrato de préstamo de equipo entre ella y Ríos, quien se comprometió a devolver dicho equipo a la recurrida al termi-

nar la relación comercial entre ellos. Los recurrentes no fueron parte de dicho acuerdo.

El tanque quedó colocado bajo tierra, con capa de concreto encima, y en medio de cuatro columnas sobre las cuales se levanta el edificio en cuestión que es una estructura de hormigón de tres pisos. Algunas de las columnas quedan a una distancia de ocho pulgadas del costado del tanque.

El 24 de noviembre de 1959, Ríos le notificó a la recurrida su interés en terminar sus relaciones comerciales con ella. La recurrida le expresó a Ríos que de así hacerlo removería los dos tanques de gasolina enclavados en su negocio. Ante tal posibilidad los recurrentes radicaron demanda de accesión el 10 de diciembre de 1959. La compañía recurrida intentó, no obstante, la remoción de los tanques, viéndose obligados los recurrentes a solicitar la correspondiente orden de entredicho, que fue concedida. Luego de radicarse la solicitud de entredicho se llevó a cabo la estipulación antes referida que limitó la controversia a los derechos de las partes con respecto al tanque de más reciente instalación.

Visto el caso en su fondo, el tribunal a quo resolvió que no procedía la accesión por los siguientes motivos:

1) El tanque aquí envuelto conserva su naturaleza de bien mueble, ya que no es inmueble ni por incorporación ni por su destino.

2) El tanque no constituye una edificación y es removible sin menoscabo del inmueble o del propio tanque.

3) El derecho de accesión parte del hecho de haberse edificado sin contrato, con buena o mala fe, en terreno de un extraño, por lo que habiendo un contrato (entre la recurrida y Ríos) las relaciones entre las partes se rigen por el mismo; que del referido contrato surge la intención de las partes de que el tanque se considerase un bien mueble y removible, y que este elemento de intención es predominante al determinar el carácter de mueble o inmueble de un objeto, según lo resuelto en *Romaguera e Hijos* v. *Tribunal*, 61 D.P.R. 114 (1942).

Concluyó el tribunal de instancia que la prueba dejó establecido que el tanque conserva su naturaleza de bien mueble y puede ser separado de la propiedad sin menoscabo o quebrantamiento del edificio por lo que no procedía la accesión. [1]

No conforme con dicha decisión, los recurrentes han elevado a nuestra consideración el presente recurso de revisión señalando como errores incurridos por el tribunal de instancia el considerar necesario resolver sobre la naturaleza mueble o inmueble del tanque, el determinar que el tanque no dejó de ser mueble, y que el elemento de intención es determinante de la naturaleza mueble o inmueble de un objeto.

A los fines de resolver el problema de accesión en este caso, y en ausencia de pacto o circunstancias que justifiquen lo contrario, no nos sentimos obligados a pasar sobre la naturaleza mueble o inmueble del referido tanque. Tampoco tenemos que resolver el caso sobre la base de que los derechos de la recurrida son equivalentes a los de un arrendatario pues, si bien es verdad que la propiedad en cuestión era poseída por un arrendatario, que lo era Ríos, cuando la recurrida contrató con éste la instalación del tanque en dicha propiedad, no es menos cierto que fue la recurrida la que de hecho soterró su propio tanque en la finca en cuestión. Dicha gestión se realizó de buena fe pues los dueños de la propiedad, o sea los recurrentes que eran los arrendadores con respecto a Ríos habían dado permiso para llevar a cabo dicho trabajo. La recurrida nunca fue, por supuesto, un *poseedor* del inmueble en cuestión. Esto es así porque encontramos la solución de la cuestión planteada, independientemente de las precedentes consideraciones, en el estudio y aplicación de los Arts. 287, 294, 297 y 382 del Código Civil (31 L.P.R.A. secs. 1131, 1161, 1164 y 1468) que disponen lo siguiente:

"Sec. 1131.

La propiedad de los bienes, ya sean muebles o inmuebles,

[1] Para un análisis crítico de esta opinión, véase la nota publicada en la Rev. Jur. U.P.R., vol. 30, pág. 95.

lleva consigo el derecho por accesión, a todos lo que ellos producen, o se les une o incorpora, natural o artificialmente."
"Sec. 1161.

Lo edificado, plantado o sembrado en predios ajenos y las mejoras o reparaciones hechas en ellos, pertenecen al dueño de los mismos, con sujeción a lo que se dispone en las secciones siguientes."
"Sec. 1164.

El dueño del terreno en que se edificare, sembrare o plantare de buena fe, tendrá derecho a hacer suya la obra, siembra o plantación, previa la indemnización establecida en las secs. 1468 y 1469 de este título, o a obligar al que fabricó o plantó, a pagar el precio del terreno, y al que sembró, la renta correspondiente."
"Sec. 1468.

Los gastos necesarios se abonan a todo poseedor; pero sólo el de buena fe podrá retener la cosa hasta que se los satisfagan.

Los gastos útiles se abonan al poseedor de buena fe con el mismo derecho de retención, pudiendo optar el que le hubiese vencido en su posesión, por satisfacer el importe de los gastos o por abonar el aumento de valor que por ellos haya adquirido la cosa."

■ Lo primero que debemos señalar es que a los fines de que proceda la accesión, estas disposiciones no requieren taxativamente que el objeto situado en el inmueble haya adquirido en tal virtud el carácter de inmueble ni que se haya adherido al suelo "de suerte que no pueda separarse de él sin quebrantamiento de la materia o deterioro del objeto" como se dispone en el inciso 3 del Art. 263 del Código Civil (31 L.P.R.A. sec. 1043) al definir lo que son bienes inmuebles.   Tampoco es requisito que la persona que realiza la obra que motiva la accesión sea un poseedor pues, como dice Scaevola, *Código Civil*, 5ta. ed., tomo VI, págs. 580–581:

"No obstante, la solución del problema legal que examinamos, por ser de carácter y aplicación generales, no parte de la base ni del supuesto de ser preciso que el señor de los materiales posea jurídicamente la finca a la que incorporó éstos.  Interviniendo aquél de buena fe, no importa que sea o no poseedor del terreno; en uno y otro caso se declaran sus deberes y facultades por el artículo 361 [297 de nuestro Código Civil].  Los 453 y

454 [382 y 383 del nuestro] sirven de norma para ambos casos, porque la indemnización que prescriben es justa y procedente en el problema que representan, medie o no la circunstancia de la posesión por parte del propietario de los materiales."

■ De acuerdo con las referidas disposiciones de nuestro Código Civil, la accesión no se limita a edificaciones de carácter sustancial y permanente tales como edificios, **viviendas**, rellenos, muros de contención y canales de riego, sino que se da con respecto de otras obras y mejoras, como las de alumbrado, ascensores y servicio de agua, hornos, depósitos y cobertizo; lavaderos, fuentes y abrevaderos. Scaevola, *Código Civil*, 5ta. ed., tomo VI, págs. 582–583; Manresa, *Comentarios al Código Civil Español*, 7ma. ed., tomo III, pág. 260; Puig Peña, *Tratado de Derecho Civil Español*, tomo III, vol. 1, pág. 129, escolio 24; Sentencia del Tribunal Supremo de España de 18 de diciembre de 1956. Es más, los citados comentaristas aceptan que mejoras útiles "edificadas" en un inmueble, pero susceptibles de ser retiradas sin deterioro del suelo pueden ser objeto de accesión. Scaevola sostiene que la persona que las "edificó" de buena fe en suelo ajeno puede retirarlas (Scaevola, *op. cit.*, tomo VI, págs. 581–582) mientras que Manresa quien también indica lo mismo, añade:

"Pero el espíritu en que se inspira el Código en esta materia de mejoras, y la incorporación de éstas a la cosa, impone una limitación. Siempre concede el Código derecho al propietario para quedarse con las mejoras . . . Si, pues, él quiere quedarse con las mejoras, el poseedor no puede retirarlas . . ." (Manresa *op. cit.*, tomo IV, págs. 317–318.)

En *Edwards* v. *S & R Gas Co.*, 73 So.2d 590 (La. 1954), Leon Gray, dueño de una residencia o lugar de pesca, solicitó y obtuvo de la demandada el arrendamiento de un tanque de gas butano que fue colocado por ésta montado en bloques de concreto sobre la tierra, como a 10 ó 20 pies de la casa, conectado a ésta por una tubería de cobre de ¾ de pulgada que podía ser desconectada meramente con mover una tuerca. Dicho contrato, aunque escrito, no se inscribió. Luego Gray

vendió la propiedad al demandante con las mejoras, pero en la escritura no se mencionó el referido tanque. La demandada trató de que el demandante realizase un convenio similar al que tenía con Gray con respecto a suministro de gas butano y al no lograrlo, removió el tanque y le envió al demandante un cheque por el monto del gas contenido en el recipiente. El demandante devolvió el cheque y demandó por daños consistentes en el valor del tanque y su contenido, pérdida del uso de la residencia y por su humillación e inconvenientes, alegando que el tanque se había constituido en propiedad inmueble y su título había pasado al demandante junto con el de la propiedad. Se resolvió, revocando la doctrina de un caso anterior, que: a) el tanque no se convirtió en inmueble porque no lo instaló el dueño de la propiedad como lo exige el Art. 468 del Código Civil de Luisiana, ni se localizó en la propiedad para beneficio de la misma, sino por la conveniencia de su dueño, ni se instaló en forma permanente; y, b) bajo los Arts. 504 y 508 del Código Civil de Luisiana, (este último es similar al 297 de nuestro Código Civil), concediendo que el tanque se convirtió en inmueble, el demandante no puede retenerlo, sin pagar compensación por el mismo; el demandante no adquirió título del tanque porque hasta que Gray o el demandante decidieran retenerlo, el título del tanque permanecía en la demandada y ésta lo removió antes que el demandante resolviera constituirse en dueño del mismo y, por lo tanto, procedía limitar la adjudicación en el caso al valor del gas contenido en el tanque.

En Luisiana, el Art. 508 del Código Civil contiene disposiciones equivalentes a las del Art. 297 del nuestro.(²)

---

(²) "Art. 508. When plantations, constructions and works have been made by a third person, and with such person's own materials, the owner of the soil has a right to keep them or to compel this person to take away or demolish the same.

If the owner requires the demolition of such works, they shall be demolished at the expense of the person who erected them, without any compensation; such person may even be sentenced to pay damages, if the case require it, for the prejudice which the owner of the soil may have sustained.

La decisión en dicho caso, por supuesto, concuerda con el principio esbozado por Scaevola de que las mejoras útiles construidas de buena fe en suelo ajeno pueden ser retiradas por su constructor. Sin embargo, no estamos de acuerdo, por considerarlo improcedente, con el primer fundamento de la anterior decisión, pues no estaba en juego el carácter de mueble o inmueble del recipiente ni era necesario asumir que el tanque en cuestión había adquirido el carácter de inmueble para que se aplicase el referido Art. 508. *Folse* v. *Loreauville Sugar Factory*, 156 So. 667 (La. 1934), citado como autoridad en *Edwards*, nos señala, a nuestro juicio, el razonamiento jurídico correcto aplicable a casos de esta naturaleza. Se trataba allí de un cobro de dinero por un acreedor de una compañía operadora de una central azucarera perteneciente a un individuo que la vendió a otro, y por éste a una corporación, incluyéndose en la venta ciertas mejoras de maquinaria y equipo instaladas en la central por la referida operadora. La corte determinó que estas mejoras eran removibles a un costo nominal y sin causar perjuicio a la factoría. La cuestión a resolver consistía en determinar si las ventas incluían o no tales mejoras, pues si se podían excluir mediante determinación de que el título de tales mejoras permaneció en la operadora, los demandantes obtenían una fuente de donde cobrar sus acreencias. Al resolver que el título de dichas mejoras no pasó conjuntamente con la venta de la central y, por el contrario, se conservó por la operadora que los instaló originalmente, la corte, después de resolver que las mejoras en cuestión no se habían incorporado

---

If the owner keeps the works, he owes to the owner of the materials nothing but the reimbursement of their value and of the price of workmanship, without any regard to the greater or less value which the soil may have acquired thereby.

Nevertheless, if the plantations, edifices or works have been made by a third person evicted, but not sentenced to make restitution of the fruits, because such person possessed bona fide, the owner shall not have a right to demand the demolition of the works, plantations or edifices, but he shall have his choice either to reimburse the value of the materials and the price of workmanship, or to reimburse a sum equal to the enhanced value of the soil."

a la propiedad al extremo de adquirir el carácter de inmueble, determinó que "el status de estas mejoras como propiedad se rige por el artículo 508 del Código Civil de Luisiana" que, como antes indicamos, es similar al 297 nuestro. Añadió la corte: "Dicho artículo provee (en parte) que cuando una persona siembra, edifica o realiza obra, con sus propios materiales, en suelo ajeno, el dueño de éste tiene derecho a retener tales bienes o a obligar a dicha persona a removerlos o destruirlos." El artículo prescribe los deberes y obligaciones del dueño del suelo para cuando éste resuelve ejercer sus derechos; por lo tanto, mientras dicho dueño no tome acción alguna con respecto al asunto, las terceras personas que las construyeron o instalaron retienen el título de las mismas.

El derecho de accesión sobre el tanque de gasolina en el caso que nos ocupa es aún más evidente y firme. Contrario a la situación prevaleciente en los dos casos precedentes en que las mejoras no habían sido adheridas al suelo y eran de fácil remoción sin causar perjuicio al inmueble donde fueron instaladas, en el presente caso el tanque en cuestión había sido soterrado en la propiedad cubierto con una capa de concreto. El tribunal de instancia resolvió que el tanque podía "ser separado de la propiedad sin menoscabo alguno o quebrantamiento del edificio," dirimiendo así el conflicto en el testimonio de los peritos de las partes sobre el particular. Pero la realidad es que la prueba demostró que se corrían riesgos de consideración en la remoción del tanque, pues éste se soterró entre unas columnas de un edificio de tres pisos, cercano a y más bajo de las zapatas de tales columnas. (T.E. 65-68 y 89.) Bajo circunstancias aparentemente menos peligrosas se resolvió en *Monroe Automobile Supply Co. v. Cole,* 6 La. App. 337 (1928), que la remoción de un tanque instalado bajo el camino de entrada a una estación de gasolina y cubierto con una capa de concreto causaría perjuicios al suelo.

◼ Tanto la recurrida como el tribunal de instancia sostienen que no procede la accesión en este caso porque fue la

intención de las partes, expresada en el contrato otorgado por Ríos y la recurrida bajo el cual ésta proveyó e instaló el tanque, que dicha facilidad no se considerase un objeto inmueble y removible y, por lo tanto, de acuerdo con la doctrina de este Tribunal Supremo establecida en *Romaguera e Hijos* v. *Tribunal*, 61 D.P.R. 114 (1942), este elemento de intención es predominante al determinar el carácter de mueble o inmueble de un objeto. Después de un detenido análisis de este caso, llegamos a la conclusión que no es aplicable a la situación del caso que motiva esta opinión, por las siguientes razones: 1) las partes en este litigio ni hablaron ni convinieron con respecto al carácter de mueble o inmueble del tanque antes o después de su instalación en la propiedad de las recurrentes. Por el contrario, la intención de uno era diametralmente opuesta a la del otro sobre este particular y ninguna de las dos partes conoció de la intención de la otra. Además, aun admitiendo que la intención es un factor a considerar, como lo sería cualquier pacto expreso de las partes sobre la materia o circunstancia que refleje su entendido sobre el particular, al determinar el carácter de mueble o inmueble de un objeto, de acuerdo al Art. 263 del Código Civil en vigor (31 L.P.R.A. sec. 1043), ya hemos indicado previamente que a los efectos de determinar si procede o no la accesión en casos como éste, no es necesario hacer tal determinación; 2) los tanques de mieles en *Romaguera e Hijos* estaban situados sobre el terreno, podían ser desarmados y armados de nuevo en otro sitio sin quebranto o deterioro del suelo ni del objeto, contrario a la situación prevaleciente con respecto al tanque de gasolina en el caso que nos ocupa, según hemos demostrado previamente; y, 3) por último, en *Romaguera e Hijos* se trataba del cobro de la contribución sobre bienes inmuebles que el Tesorero de Puerto Rico trataba de imponer sobre los referidos tanques de mieles construidos en terrenos del Pueblo de Puerto Rico arrendados a la dueña de los tanques en cuestión. La determinación a hacerse, por lo tanto, no era una sobre accesión y sí una sobre el carácter de

mueble o inmueble de los tanques bajo las disposiciones del Art. 290 del Código Político que para la fecha de dicho caso proveía que "las maquinarias, vasijas e instrumentos o implementos no adheridos al edificio o suelo no se considerarán como inmuebles." (El texto actual de esta disposición aparece en 13 L.P.R.A. sec. 443.)

Las citas del comentarista Manresa en su obra *Comentarios al Código Civil Español*, 7ma. ed., tomo III, págs. 292–293 y 289, que nos ofrece la recurrida, en apoyo de su tesis de que no procede la accesión se refieren al caso del que construye en suelo propio con materiales ajenos y por lo tanto no constituyen autoridad en conflicto con la determinación nuestra de que se puede invocar con éxito el derecho de accesión por el dueño del suelo, en casos como el actual.

■ Ciertamente que si consideramos este caso exclusivamente a la luz de las realidades económicas no encontramos que la recurrida sufriera perjuicio sustancial alguno al reconocerse que jurídicamente procede el derecho de accesión, pues el tanque en cuestión no es un objeto precioso o irremplazable ni hay constancia de que tenga un valor sentimental y, por el contrario, es un objeto fácilmente reemplazable en el mercado, de manera que el pago a la recurrida de su valor ya convenido por las partes, constituye una adecuada indemnización. Por otra parte, no parece socialmente útil, el permitir la ' separación del tanque con evidente riesgo a la propiedad y al negocio de los recurrentes y de su arrendatario.

*Por las razones expuestas, debe revocarse la sentencia dictada por el tribunal de instancia, y en su lugar dictarse otra declarando con lugar la demanda en este caso previo pago por los recurrentes a la recurrida de la suma de $1,250 como compensación, más las costas del litigio.*