MORTON TRUST CO. v. AMERICAN SALT CO.

(Circuit Court, E. D. Louisiana. May 3, 1906.)

No. 13,289.

1. FIXTURES—LOUISIANA STATUTE—IMMOVABLES BY DESTINATION.

Civ. Code La. art. 468 (459), makes "immovables by destination" all movables which are permanently attached to realty by the owner, and also all movables which are placed thereon by the owner for its service and exploitation; and in respect to the latter class, the instances given in such article are not restrictive, but merely illustrations.

2. SAME.

After a movable has become immobilized by destination (Civ. Code La. art. 468 [459]), a mere act of will on the part of the owner cannot of itself deimmobilize it as against a mortgagee of the realty. The mere cessation by the owner of the work in which the immobilized movable is employed does not of itself deimmobilize the movable.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Fixtures, §§ 32–41.]

3. SAME.

Under Civ. Code La. art. 468 (459), machinery and apparatus placed on land by the owner for the sinking or working of oil wells thereon, or for sinking shafts for salt mines, become immovables by destination in favor of a mortgagee, as are also horses used in conducting any business to which the realty or any part thereof is devoted, and goats placed and kept on the land for the purpose of keeping it free from brush and weeds; but building materials intended for use in building on the land do not become immovables until so used, nor do staves for making barrels to contain a product of the land.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 23, Fixtures, § 4.]

In Equity.

The Morton Trust Company, as trustee for the bondholders, who were secured by mortgage on a certain tract of land known as "Belle Isle," situated in the parish of St. Mary, La., on which was a salt mine, filed its bill in equity setting out grounds for the appointment of a receiver to the property. After notice to the defendant, the court appointed a receiver. The defendant appealed to the Circuit Court of Appeals, which sustained the appointment of the receiver, but modified the order appointing him so as to correct an ambiguity which might have been construed as authorizing the receiver to take possession of all the property of the defendant, whether claimed to be covered by the mortgage or not. Subsequently the Circuit Court directed the special master to ascertain and report what movables situated on the property were covered by the mortgage as being "immovables by destination," under the law of Louisiana. The master reported a large quantity of movables—being apparatus for sinking and working oil wells, apparatus for sinking shafts, building materials, bricks, machinery, staves, draft horses, a flock of goats, and other things—as being exempt from the operation of the mortgage. Exceptions to the report having been taken by complainant, the Circuit Court disaffirmed the report, and ordered it recast, for the following reasons, which will appear in the opinion.

Foster, Milling, Godchaux & Sanders, for complainant.
Farrar, Jonas & Kruttschnitt, for defendant.

PARLANGE, District Judge (after stating the facts). The Circuit Court of Appeals, passing on the interlocutory decree appointing a receiver in this cause, said that that decree might be construed to authorize the receiver to take possession of property of the defendant company which is not included in the mortgage, and that court modified the decree so as to correct the ambiguity which might exist in that respect. That action of the Circuit Court of Appeals was obviously correct. The order had, through inadvertence, been made to include all the property of the defendant company situated within the jurisdiction of this court, whether covered by the mortgage or not. But the question which now arises, as to what immovables by destination are included in the mortgage, had not and could not have arisen before the Circuit Court of Appeals, and necessarily, therefore, that court has never expressed an opinion upon it.

The learned counsel for the American Salt Company in his brief before the master, and, as I understood, in his argument to the court, contended that the indenture is nothing more nor less than a Louisiana mortgage, and that the words "tenements, hereditaments, and appurtenances," etc., in the first part of the indenture (pages 4 and 5) are, to use the words of the learned counsel's brief, "common-law terms, which mean 'immovables by destination,' which is the civil law term,"— citing authorities. I agree fully with the learned counsel for the defendant, and I am satisfied that the indenture, as plainly shown by its article 15, is to be considered only and exclusively as a Louisiana mortgage, and that no rights can be derived from it, as to the matters here involved, by virtue of the laws of New Jersey, or because of any supposed chattel mortgage, as contended by the learned counsel for the complainant and the receiver. Therefore, the sole and only question to be decided is whether, under the laws of Louisiana, the master has correctly found the immovables by destination which are affected

by the mortgage. Civ. Code La. arts. 468 (459) and 469 (460), to-gether, possibly, with article 467 (458), concerning which there is a controversy among the commentators as to whether immovables by destination or by nature are created by that article, compose the entire codal law on the subject of physical immovables by destination in Louisiana. Those articles are taken textually from the Code Napoleon, except that as they now stand in the Louisiana Civil Code there is in article 468 (459) a serious error in the translation from the French text of the Louisiana Code of 1825 and from the Code Napoleon in rendering the French word "exploitation" into the English word "improvement" in the English text, which reads as follows:

"Civ. Code La. art. 468 (459). Things which the owner of a tract of land has placed upon it for its service and improvement, are immovable by destination. Thus the following things are immovable by destination when they have been placed by the owner for the service and improvement of a tract of land, to wit: Cattle intended for cultivation; implements of husbandry; seeds, plants, fodder and manure; pigeons in a pigeon house; beehives; mills, kettles, alembics, vats, and other machinery made use of in carrying on the plantation works; the utensils necessary for working cotton, and sawmills, taffia distilleries, sugar refineries and other manufactures. All such movables as the owner has attached permanently to the tenement or to the building, are likewise immovable by destination."

Whenever there is a conflict between the French text of the Louisiana Code of 1825 and the English text, the former prevails. Phelps v. Reinach, 38 La. Ann. 551.

The word "exploitation," which is of somewhat recent importation into the English from the French, has a different meaning from the word "improvement." See the Century Dictionary.

"Exploitation [Cent. Dict.]: (1) The act or process of exploiting, making use of, or working up; utilization by the application of industry, argument, or other means of turning to account, as the exploitation of a mine or forest, of public opinion, etc. 'Joint-stock companies or associations of capital are now very advantageously employed for the exploitation of different branches of industry.' To exploit. (2) To make complete use of; work up; bring into play; utilize; cultivate." (Recent, from modern French "exploiter.")

As to the persuasive authority of the French commentators in construing the codal law of Louisiana, see Meyer v. Richards, 163 U. S. 399, 16 Sup. Ct. 1148, 41 L. Ed. 199, Viterbo v. Friedlander, 120 U. S. 728, 7 Sup. Ct. 962, 30 L. Ed. 476, and Groves v. Sentell, 153 U. S. 478, 14 Sup. Ct. 898, 38 L. Ed. 785.

The first condition for the creation of an immovable by destination is that it be placed by the owner, and no other, upon realty. This realty, as must be clearly borne in mind, may be either land or a building erected upon land. This realty, under its double aspect just mentioned, is called by the French commentators "fonds" from the Latin "fundus." No English word occurring to me which seems to render fully this word, I shall use the word "fundus" for brevity.

There are two, and only two, ways in which an immovable by destination may be created:

"(1) Without any physical attachment to the fundus, but merely by the dedication of the movable to the service of the fundus. [See Civ. Code La. art. 468.] (2) By means of a physical attachment affixing the movable permanently—à perpétuelle demeure. [See Civ. Code La., last paragraph of article 468.]"

The above is an extract from Planiol, Droit Civil (Paris Ed. 1904) vol. 1, p. 703.

These two kinds of immovables by destination are plainly shown by Civ. Code La. art. 468 (459), in which instances of both kinds are given. (See that article cited in full, supra.) It may be well to say here that the instances given in that article are clearly not restrictive. The language shows it by the use of the word "thus." The French commentators all agree that the instances are illustrative, not limitative.

It should be noticed that in the last paragraph of Civ. Code La. art. 468 (459), it is said that "all such movables as the owner has attached permanently, etc., are likewise immovables by destination." And in the first part of Civ. Code La. art. 469 (460), it is said: "The owner is supposed to have attached to his tenement or building forever such movables as are affixed to the same with plaster," etc. The words "permanently" and "forever" in the articles just cited are translations from the French phrase "à perpétuelle demeure," which may be rendered as "to remain perpetually." It is important to consider this idea of permanency and perpetuity, and to clearly comprehend that it applies only to that kind of movables which are made immovables by destination by means of a physical attachment to the fundus, and that it has no bearing at all on the other kind. Baudry-Lacantinerie, Droit Civil, Des Biens (Paris Ed. 1890) vol. 5, p. 59, states his understanding of the law to be:

" * * * All the objects attached to a fundus by the owner for its service and exploitation are by that fact alone immovables by destination, whether they are placed there forever or not. * * * All movable objects also become immovables by destination, which an owner has attached to his fundus forever in another interest [the author meaning an interest other than the service and exploitation of the fundus]; such, for instance, as a purpose of utility to or ornamentation of the fundus. Therefore, perpetuity does not seem necessary except when the immobilization takes place in an interest other than the agricultural or industrial benefit of the fundus."

The same author, same work and volume (page 56) states the essentials of immobilization to be:

"(1) That the movable was placed on a fundus, that is to say, an immovable by nature [either land or a building]; for the movable can only become an immovable by destination as being an accessory to the fundus. (2) That the movable was placed there in the interest of the fundus, that is to say, for its service, its exploitation, its utility or its ornament. (3) That it was placed there by the owner of the fundus. Immobilization by destination necessarily supposes the act of the owner. It could not result from the act of a lessee, a renter, or even a usufructuary. The reason is that immobilization by destination takes place in the interest of the fundus, and the owner is the sole representative of that interest."

Planiol, in the work and volume cited, supra, at page 703, gives a test, which is that the movable in order to become immobilized must be employed in the service of the fundus, and not in the service of the person who owns the fundus. Thus, saddle and carriage horses on a plantation, used for the pleasure or convenience of the person of the owner, are not immovables by destination, whereas a plantation horse owned by the owner of the plantation, and used by the overseer to superintend the plantation work, would unquestionably be an im-

movable by destination. Thus, again, in France, the horse used by a brewer to turn a mill or other machinery in the brewery is an immovable by destination; but, on the other hand, the horse used outside of the brewery to convey beer to the shopkeepers is not. After a movable has become immobilized by destination, a mere act of will on the part of the owner cannot deimmobilize it. If this were not true, the owner in order to partly defeat the mortgage could, as soon as he feared a seizure, declare all the immovables by destination to be deimmobilized. But it is settled that the owner cannot do so as against a mortgagee except by a removal of the movables from the land, and by a bona fide sale followed by delivery, and subject to the right of the mortgagee to prevent the removal, whether the owner be in good or bad faith. Weil v. Lapeyre, 38 La. Ann. at page 306; Insurance Co. v. Gerson et al., 38 La. Ann. 310.

No mere cessation of the work by the owner can deimmobilize the movables as against a mortgagee. If a sugar planter abandons the cultivation of sugar, his mill and other immovables by destination will not, ipso facto, become mobilized as against the mortgagee. They will remain immovables until they are removed by the owner under circumstances which allow the title in them to be transmitted to another. Thus, the contention was denied in France that the death of the owner put an end to the immobilization. Planiol has shown us that the object is intended for the service of the fundus, and not for the service of the person of the owner; so that an immovable by destination, not lawfully deimmobilized, continues to be an immovable so long as it is capable of an actual or a potential service to the fundus, or until it is lawfully deimmobilized. Of course, cases could be imagined and might occur where immobilization would cease even regardless of the will of the owner, as where, for instance, such a change should occur in the nature of the fundus or of the movable that either the movable could no longer per se subserve the exploitation of the fundus, or else the latter per se could no longer, because of a change in its nature, be exploited by means of the movable.

Applying the foregoing law to the facts of this matter, it seems clear to me that all the apparatus for sinking or working oil wells, etc., were and still are immovables by destination. It certainly was intended for the exploitation of the land, and has been so used and can again be so used. The mere fact that the use of the apparatus was stopped some 90 days before the seizure can make no difference in its status. The apparatus for sinking shafts, etc., has the same status. Even if it be true that the owner did not intend to use it again, that fact, of itself, would not have deimmobilized the apparatus.

I will say here that it seemed to be assumed in the examination of Mr. Freeman, from whom alone evidence appears in this matter, that the question whether a particular movable was immobilized must be determined with exclusive reference to service or usefulness to the salt mine. Such is not my understanding. As has been shown, a fundus, of which a movable becomes a part by destination, may be a building as well as any other property immovable by nature. The French commentators agree that it matters not whether the fundus is exploited

for agricultural or industrial purposes, or whether it is used merely for habitation. Many industrial establishments might have been placed on the island mortgaged in this case, and each one might have incorporated into itself immovables by destination, even if it had no direct connection with the working of the salt mine. However, it would seem, under the proof, that most, if not all, the buildings did have a reference to or a connection with the salt mine; which, of course, would make the case stronger still. If the mortgagors built on the mortgaged land an establishment for the making of bricks, all the movables placed in the building for the purpose of exploiting the plant became immobilized. A fortiori, did this take place if the purpose of making bricks was to use them in the salt mine or in connection therewith.

The horses were undoubtedly immovables by destination. It is not even pretended that they were intended for the service of the persons of the owners. They were intended and used for the service of the fundus.

The goats were unquestionably immovable by destination. There is a unanimity of opinion among the French commentators that sheep kept for any purpose beneficial to the fundus, and not for the market, are immovables. The proof is that the flock of goats was placed on the land for the sole purpose of destroying the brush and weeds and keeping down the grass. It has been held in France that cows attached to dairy farms are immovable by destination.

By applying the general principle that all movables intended for the exploitation of the fundus become incorporated into it, it would seem clear that all materials intended to be used in building and repairing should be immovables by destination. But the French commentators show that the Code Napoleon (as also the Louisiana Civil Code, article 476 [468]) has chosen to make a special exception with regard to building materials, which do not become immobilized until actually used and incorporated into the building. Therefore, all material of any kind for building or repairing, including the bricks, of course, must be excluded from the operation of the mortgage.

It seems to have been held in France that barrel staves intended to be used in making barrels to contain the product of a factory are not immovables, doubtless by analogy with building materials. Therefore, the staves will be excluded.

The report of the master must be disaffirmed. It will be recommitted to him, with instructions to recast it with reasonable dispatch, in accordance with the views hereinabove expressed.