ODOM, J.
 

 On March 1, 1918, the plaintiff purchased from W. J. Hannon two lots of ground at 210-212 Camp street, in New Orleans, with the buildings and improvements thereon. The building at the time was occupied by -the Item Company, Limited, defendant, as lessee under a lease from Hannon executed originally in 1908, and renewed from year to year until 1915, when a second lease contract was entered into between Hannon and the defendant.
 

 "The Item Company, Limited, continued its occupancy and use of the premises as tenant under its lease contract from Hannon up to September 30, 1920, or two years and seven months after Richardson purchased it; Richardson having extended the lease after he purchased the property.
 

 When the Item Company vacated the leased premises in September, '1920, it removed therefrom an automatic sprinkler system which Richardson contends formed part of the building, and which he claims to have owned by virtue of his purchase of the building from Hannon.
 

 Richardson brought the present suit against the Item Company for the value of the sprink
 
 *424
 
 ler system and for damages done to the building in removing it. But all claims for damages to the building itself have either been paid or abandoned and.have passed out of the ease, leaving the value of the property removed the only item in controversy.
 

 The defense of the Item Company is that the sprinkler system was installed by it at its own expense with the consent of Hannon, the owner of the building at the time of installation, who agreed that the outfit was to be arid remain its property subject to removal at any time. The lower court rejected plaintiff’s demands, and he appealed.
 

 Hannon leased the building to the Item Company in 1908. In 1900 the lessee requested the owner to install a sprinkler system therein in order to reduce the fire hazard. This request was refused by the owner, who agreed, however, that the lessee might install and maintain such system at its own expense with the privilege of removal when the premises were vacated. It was ascertained that the installation of the system would materially reduce the fire risk and enable the owner of the building to obtain a substantial reduction in fire insurance rates, and the owner of the building agreed to pay to the lessee annually the difference between the amount of premiums then paid on fire policies and the amount of such premiums paid after the apparatus was installed. The installation of the system resulted in saving to the owner of the building of about $234 a year in insurance premiums, which amount he paid to the lessee annually up to the time he sold to Richardson, and thereafter Richardson paid the amount to the lessee.
 

 That the' Item Company, the lessee, installed the sprinkler system at its own ex-píense, and that Hannon, the lessor, especially agreed that the lessee should be and remain the owner of it and might remove it at will, is not disputed.
 

 But Richardson contends that the sprinkler system was an immovable by destination, a part of the building itself, and passed to him under his purchase from Hannon.
 

 Under the circumstances disclosed, the contention is not well founded. The sprinkler system was not an immovable by destination. Immovables by destination are things which are placed upon or attached to the realty by the owner, not by a third person, for its service and improvement. Civ. Code, art. 488.
 

 A movable becomes an immovable by destination when the owner unites it with lands, tenements, or buildings which are also owned by him, with the intention that the movable shall henceforth be merged and associated with the destiny of the realty. Eor a movable to become an immovable by destination it must necessarily be placed upon or attached to the immovable by the owner himself. When such things are placed upon an immovable by a lessee as an improvement or addition, they remain movables, and may be carried away by him unless attached with lime and cement.
 

 It has twice been held by this court that a railroad laid upon the soil of another is a movable. In the case of State v. Mexican Gulf Railway Co., 3 Rob. 513, the court said: “But the Railway is not an immovable, either by nature or destination, if the.soil over which it is laid belongs to another. The rails, therefore, did not become immovable by being laid down.”
 

 In Woodward v. Railway Co., 39 La. Ann. 566, 2 So. 413, 414, the court said: “As the railroad was constructed on the soil of another, it was movable property, and as such
 
 *426
 
 governed by tbe law regulating pledges on movables.”
 

 Counsel likens this sprinkler system to wire screens, water, gas, sewerage, and heating pipes, radiators and the like mentioned in article 467 of the Civil Code, as amended by Act No. 51 of 1912, and cites, in support of his contention that it could not be lawfully removed from the premises, the ease of Scott et al. v. Brennan et ux., 161 La. 1017, 109 So. 822, 48 A. L. R. 1143.
 

 Neither the article of the Code nor the case cited has any bearing upon the issue involved in the ease at bar. The article of the Code provides that wire screens, pipes, radiators, Bathtubs, and the like “when actually connected with or attached to the building
 
 by the owner
 
 for the use or convenience of the building are immovable by their nature.” (Italics ours.)
 

 In the cited case the owner of a building installed within it a water heater and attached it to water pipes and a tank, these together constituting a hot water system for the building, which contained four floors, with a bathroom on each floor. After selling the building, the vendor removed the water heater and the vendee'Brought suit against him for its value. The vendee was allowed to recover on the ground that the water heater, having been attached to and made part of the hot water system by the vendor, was an immovable by nature under article 467 of the Code. In the case at bar the sprinkler system was put in the building, not by t-he owner, but by the lessee. Under article 2726 of the Civil Code, “the lessee has a right to remove the improvements and additions which he has made to the thing let, provided he leaves it in the state in which he received it. But if these additions be made with lime and cement, the lessor may retain them, on paying a fair price.”
 

 This sprinkler system consisted of metal pipes running through the building but not permanently attached to it. The pipes were supported by hangers which were attached to the building by screws. The system was installed by the Grinnell Company, Inc. Mr. Stacey, its department manager, stated with reference to the method of installation:
 

 “As to the method covering installation of the sprinkler equipment, all piping is supported by hangers which are attached to the building with screws, no nails being permitted by the National Board of Underwriters. This makes it possible to remove the equipment from buildings without any material injury to the buildings.”
 

 These pipes were all connected together, but not joined to any other piping permanently attached to the building. They were connected with the water supply on the outside. Clearly, therefore, this equipment was a movable, and did not pass with the building.
 

 Mr. Hannon testified that the lessee installed the system at its own expense and owned it, and that he did not intend to sell it to Richardson. In a letter to the lessee dated June 17, 1909, Hannon’s authorized agent said: “Mr. Hannon will also grant you the privilege of removing the apparatus in the event you should vacate the premises; provided you repair any damage to the building which may have been caused by removing same.” Hannon says he told Richardson at. the time of the sale that this equipment belonged to the lessee. Richardson denies this. But, even if Hannon did intend to sell it, he could have conveyed no title to Richardson, because “the sale of a thing belonging to another person is null.” Civ. Code, art. 2452. “The law establishes the rule that no one can transfer a greater right than he himself has.” Civ. Code, art. 2015; Pecoul v. Auge, 18 La. Ann. 614.
 

 
 *428
 
 The second lease contract made between Hannon and the item Company is dated June 10, 1915, and contains the following stipulation:
 

 “Said property is now in good order, condition and repair, and the said lessee binds himself to keep and maintain the same at his own expense in like good order, condition and repair, during this lease, and at its expiration to return it to lessor in like good order, the natural decay, wear and tear excepted, and to leave whatever improvements or additions he may have made to said property, free of charge, to the lessor.”
 

 Richardson contends that the clause in the lease, “and to leave whatever improvements or additions he may have made to said property free of charge to the lessor,” refers to improvements and additions made by this lessee previous to the date of the second lease.
 

 We do not think a reasonable interpretation of the contract conveys that impression. The contract provides that the lessee shall keep and maintain the property in good condition and repair “during this lease.” The clause with reference to the lessee’s leaving such improvements or additions as the lessee might make has reference to such improvements as it might make under this particular contract. It stipulates that “at its expiration”, the lessee shall return the leased premises to the lessor; that is, at the expiration or at the end of the lease period it should leave whatever improvements it may have made between June 10, 1915, the date of the lease, and the date of its expiration.
 

 • It was not intended that this lease contract should have a retroactive effect. All the testimony shows that. It was always understood between the lessor and the lessee that the lessee owned this property and might remove it. Hannon, the lessor, could not and did not intend to confer upon Richardson, the vendee, greater right than he had. If Richardson was in fact misled by the terms of the lease and has paid for something which he did not get, his remedy is against Hannon, not against the Item Company.
 

 But as a matter of fact, he was not misled or influenced by the lease contract, for he did not see it until after he purchased the building. He became familiar with it later, and acquiesced in its terms and provisions, one of which is the following:
 

 “The lessee is to be allowed the usual rebate on the insurance for fire -premiums owing to the installation of the sprinkler system.”
 

 It is not reasonable to assume that the lessee would be entitled to these rebates except upon the theory that it owned the sprinkler system. Certainly, if the owner of the building owned the sprinkler system also, he would be under no obligation to the lessee for any saving in insurance premiums on account of its installation. Richardson paid the lessee these rebates after he purchased the property, and he says he did so because he found this provision in the contract and considered it binding upon him. And so it was.
 

 The judgment appealed from is correct, and is affirmed, with all costs.
 

 ROGERS, J., takes no part.