280 So.2d 262 (1973)
Convie D. BAILEY, II, Plaintiff-Appellant,
v.
Neal KRUITHOFF, Defendant-Appellee.
No. 12038.
Court of Appeal of Louisiana, Second Circuit.
March 6, 1973.
On Rehearing May 30, 1973.
*263 Henri Loridans, Bossier City, for plaintiff-appellant.
Wilson & Armstrong, by Glenn F. Armstrong, Bossier City, for defendant-appellee.
Before AYRES, HEARD and HALL, JJ.
HALL, Judge.
Plaintiff, Convie D. Bailey, II, brought this suit to recover the sum of $668.77 from defendant, Neal Kruithoff, for the alleged wrongful removal of 1,500 feet of four-strand barbed wire fence, with 150 creosote posts, eight of which were embedded in concrete, and an iron sucker rod gate from plaintiff's property. Included in plaintiff's petition for damages was a claim for pasturage of fifteen head of defendant's cattle for a period of seventeen days at $.50 a head per day or $127.50. The defendant answered denying plaintiff's allegations and asserting he was authorized to remove the fence in accordance with a written agreement with his lessor, Mrs. Barbara Sandy, at the termination of the lease. Mrs. Sandy had sold the property enclosed by the fence to the plaintiff on January 27, 1972. The district court rendered judgment in defendant's favor and plaintiff perfected this appeal. We reverse the judgment of the district court.
The facts relating to the removal of the fence are undisputed. Defendant leased the 7½ acres of pasture land in Bossier Parish from Mrs. Sandy on November 27, 1970, for $15 per year. As part of their agreement, Mrs. Sandy in a separate written instrument, gave defendant permission to remove, at the termination of the lease, a fence and hay shed he might construct on the property. This agreement was never recorded. Defendant erected a four-strand barbed wire fence consisting of approximately 150 fence posts and an iron sucker rod gate on the property and used the land to graze several head of cattle.
*264 On January 27, 1972, plaintiff purchased the 7½ acres from Mrs. Sandy, his sister. The deed contained no reservations and made no mention of the agreement between defendant and Mrs. Sandy concerning defendant's right to remove the fence. Plaintiff's uncontradicted testimony at the trial was that he had negotiated for some time by phone with his sister who lived in El Paso, Texas, before the sale was finalized and at no time during these negotiations did she ever mention the written agreement with the defendant concerning his right to remove the fence. He stated she merely told him of the lease to the defendant and that it was to terminate in December, 1971.
Approximately three weeks after the sale defendant came onto the property and physically removed the fence, except for about eight of the posts which he had to break off just above the ground because they were embedded in concrete. In addition, during this three-week period following the sale, defendant continued to graze twelve to fifteen head of cattle on the property.
The issue is whether defendant had the right to remove the fence. The decision of this issue, as correctly noted by the trial judge in his written opinion, depends on whether the fence is classified as a movable or an immovable.
Article 464 of the Louisiana Civil Code defines an immovable by nature as follows:
"Land and buildings or other constructions, whether they have their foundations in the soil or not, are immovable by their nature."
The resolution of the issue involved in this case depends on the interpretation of the term "other constructions" as used in Article 464. Some of the various objects which have been included within the definition of "other constructions" under Article 464 are: railroad trackage, American Creosote Company v. Springer, 257 La. 116, 241 So.2d 510 (1970); a tractor shed and poultry house, Prevot v. Courtney, 241 La. 313, 129 So.2d 1 (1961); a canal, Albert Hanson Lumber Co. v. Board of State Affairs et al., 154 La. 988, 98 So. 552 (1923); a brooder for beagle puppies 25×5×4 feet and a chicken brooder 10×5×4 feet, each set on 4×4 inch posts in the ground, Lafleur v. Foret, 213 So.2d 141 (La.App. 3d Cir. 1968); an outdoor advertising sign, Industrial Outdoor Displays v. Reuter, 162 So.2d 160 (La.App. 4th Cir. 1964); a brick pit, Folse v. Loreauville Sugar Factory, 156 So. 667 (La.App. 1st Cir. 1934); and a gas tank, Monroe Automobile Co. v. Cole, 6 La.App. 337 (2d Cir. 1927).
Immovability by nature has been characterized as a creation of the law based on practical considerations and on inherent characteristics of the things concerned. What is a building or other construction qualifying as an immovable under Article 464 is left for judicial determination according to prevailing notions in society. Two criteria that are often mentioned in decisions of the courts are some degree of integration or attachment to the soil and some degree of permanency. Yiannopoulos Louisiana Civil Law of Property, Sections 42, 43, 45 and 48; Civil Law Translations, Aubrey & Rau, Property, Section 164; Movables and Immovables in Louisiana and Comparative Law, 22 LLR 517 (1962).
In this case, the fence was embedded in the grounda few of the posts were in concreteand thereby integrated with the soil. Pasture fences are generally regarded as permanent in nature.
The nature of a movable is generally such that its identity is not lost if it is moved from one location to another. Ordinarily, all that is necessary is to detach the object from its present location and move it elsewhere with no apparent diminution of its identification in the process. Certainly this is not true of a fence which has no identity as a fence until it *265 has been constructed. Once constructed the fence becomes a component part of the land on which it is placed and as such must be regarded as an "other construction" and as an immovable by nature under Article 464. In order to move a fence it must be dismantled and its identity destroyed, which is inconsistent with any reasonable concept of a movable.
American Creosote Company v. Springer, supra, is directly in point on the law to be applied in this case. In Springer, the object in question was railroad trackage, which had been constructed on the property under a lease agreement whereby the railroad company remained the owner of the trackage which the landowner was obligated to return at the conclusion of the lease or pay a penalty of $12,000. The lease was not recorded. The land was sold to Springer without reference to the trackage or the lease agreement and Springer disposed of the trackage. Plaintiff as subrogee of the railroad company, sued Springer for $12,000 as the value of the trackage.
The Louisiana Supreme Court held that if the railroad trackage was an immovable by nature when constructed on the land acquired by Springer, the lease could not be considered insofar as Springer is concerned and Springer acquired the trackage free and clear of the lease obligations, as he was not a party thereto nor was the lease recorded. McDuffie v. Walker, 125 La. 152, 51 So. 100 (1910); LSA-Civil Code Article 2266 and 2246. The court pointed out that the law provided a means by which the railroad company could have protected its interest in the trackage, that is, by recordation of the lease.
In determining the principal issue whether trackage is an immovable under Article 464the Supreme Court quoted from an earlier decision, Morgan's Louisiana & T. R. & S. S. Co. v. Himalaya P. & Mfg. Co., 143 La. 460, 78 So. 735 (1918) as follows:
"It will hardly be denied that a railroad is a `construction,' or that, when constructed, it has its foundations in the soil, as much as, or more than, many plantation buildings, bridges, and fences; nor as we think, can it be successfully denied that, when the bed of such a road has been graded and surfaced, the cross-ties placed in position, the rails laid upon and spiked to the ties, secured or connected, with angle irons and fish plates, and the spaces between the ties filled with ballast, a new and distinct thing is created in which ties, rails, spikes, irons, plates, and ballast lose their character as movables, and their identities, for all the purposes of the vendor's privileges, since such privileges can no more be enforced with respect to its several constituents without destroying the thing into which they have thus been merged than it can be enforced with respect to the canvas upon which a picture has been painted without destroying the picture." (Emphasis supplied.)
The court pointed out that immovables by nature form an economic unity with the ground. It was held that rationally a railroad track must be regarded as "construction" under Article 464. It is firmly incorporated into the ground and must be regarded as an immovable by naturea component part of the land.
We conclude that the fence involved in the case before us is an "other construction" under Article 464 and an immovable by nature. The fence was a "construction" under the ordinary, common sense meaning of that word. It was embedded in the soil, incorporated into the ground, and was a component part of the land. A fence is ordinarily regarded as having a degree of permanencynot to be readily moved about.
The agreement under which defendant retained the right to remove the fence was not recorded. The fence, together with the land, passed to plaintiff free and clear of defendant's unrecorded rights. Defendant *266 had no right to come on the property after the sale to plaintiff and remove the fence, ownership of which was then vested in the plaintiff. Defendant is thus liable for the reasonable replacement cost of the fence he removed from plaintiff's property. The evidence shows this amount is $542.30.
In relation to plaintiff's claim for damages for pasturage of defendant's cattle which remained on the property several days after the sale, we find the evidence to be insufficient to support an award for this item.
For the reasons assigned, the judgment of the trial court is reversed and it is ordered, adjudged and decreed that there be judgment in favor of the plaintiff, Convie D. Bailey, II, and against defendant, Neal Kruithoff, in the sum of $542.30, together with legal interest thereon from date of judicial demand until paid, and together with all costs of this proceeding, including the cost of appeal.
Reversed and rendered.
AYRES, J., dissents with written reasons.
AYRES, Judge (dissenting):
I respectfully dissent from the majority opinion wherein it was held that a fence erected by a tenant on leased property constituted an integral part of the realty upon which it rested and which fence thereby became an immovable, the title to which became vested in the owner of the soil.
There is no apparent disagreement between the parties with respect to the pertinent facts. For convenience, these facts will be briefly restated.
Defendant, Kruithoff, under date of November 27, 1970, leased from Mrs. Barbara Jean Sandy, for an unspecified term, a 7½ acre tract of land in Bossier Parish for pastural purposes. On the leased property, defendant erected a fence 1,500 feet in length, consisting of four strands of barbed wire attached to 150 creosoted posts, eight of which were set in concrete, passage through which was provided by the installation of a "sucker-rod" gate.
Lessor and lessee entered into a separate, but unrecorded, written agreement which authorized the defendant, at the termination of the lease, to remove the fence. In the meantime, under date of January 27, 1972, Mrs. Sandy sold the tract of land to her brother, Convie D. Bailey, II. Thereafter, Kruithoff went upon the property and removed the fenceposts, gate, and wire. For this alleged trespass, plaintiff instituted this action to recover the cost of replacing the fence as well as the cost of removing the eight post stubs left in the ground, and for the loss of pasturage for 15 head of cattle over a period of 17 days.
It is immaterial whether plaintiff's claim is based upon LSA-C.C. Art. 467, which has reference to immovables by nature, or upon LSA-C.C. Art. 468, as applied to immovables by destination. The first of these articles refers to certain improvements such as wire screens; water, gas, sewerage, and heating pipes, electric and gas lighting appurtenances and fixtures, as well as similar improvements, when they are actually connected with or attached to a building by the owner for the use or convenience of the building. The erection of a pastural fence in a rural area is not enumerated as one of the improvements mentioned in LSA-C.C. Art. 467.
The erection of the fence in the instant case would more properly come within the provisions of LSA-C.C. Art. 468 which pertain to immovables by destination. Although fences are not specifically mentioned, such an improvement comes within the general terms of the article. Therein it is recited:
"Things which the owner of a tract of land has placed upon it for its service and improvement are immovable by destination.

*267 "Thus the following things are immovable by destination when they have been placed by the owner for the service and improvement of a tract of land,....
* * * * * *
"All such movables as the owner has attached permanently to the tenement or to the building, are likewise immovable by destination." (Emphasis supplied.)
The provisions of this latter article, pertaining to improvements becoming immovables by destination rather than the provisions of the former article, with reference to immovables by nature, would, in my opinion, apply to the present situation, if the further condition that the titles of both the movable and the immovable, to which the former became attached, were vested in the same ownership. Both articles specifically so require.
Identical questions to the one presented here were heretofore before this court in Holicer Gas Co. v. Wilson, La.App., 45 So.2d 96 (1950), and in Edwards v. S. & R. Gas Co., La.App., 73 So.2d 590 (1954). Both of these cases involved the ownership of butane gas tanks placed upon property for the service of residences situated thereon. Contests as to the ownership of the tanks were between purchasers of the realty and the supplier of the tanks for the benefit of the property on which they were placed. In the Holicer case no importance was attached to the fact that the owner of the soil was not the owner of the butane tank when the tank was placed upon the land for its service. It was there held, in effect, that it made no difference that the supplier of the movable attached to the immovable was not the owner of the realty.
The holding in the Holicer case was overruled by this court in the Edwards case. In this latter case, this court, after quoting LSA-C.C. Arts. 467 and 468, emphasized the requirement that there must be a common ownership of both immovable and movable for the latter to constitute an immovable by destination. The decision in the Edwards case, in which writs were refused, is, in my opinion, applicable to and controls the situation presented here. There, we pointed out, with numerous authorities:
"Our difference from the author of the Holicer opinion is first, the tank was not truly an accessory to the fundus; second, it was not employed in the service of the fundus, but in the service of the person who owned the fundus; and third, it was not placed on the fundus by the owner of both the fundus and the movable. (We use the word fundus as accepted in our jurisprudence to mean a tract of land with buildings. See Morton Trust Co. v. American Salt Co., 5 Cir., 1906, 149 F. 540.
"The Code articles make two classifications of movables which become immobilized: those permanently attached to the building by plaster or mortar, and those which are essential to the use or service of the building or tenement or fundus. Judge Westerfield in Kelieher v. Gravois, La. App., 1946, 26 So.2d 304, 306, quoted from Baudry-Lacantinerie, Droit Civil, Des Biens (Paris Ed. 1890), Vol. 5, p. 59, as follows:
"`"`* * * All the objects attached to a fundus by the owner for its service and exploitation are by that fact alone immovables by destination, whether they are placed there forever or not. * * * All movable objects also become immovables by destination, which an owner has attached to his fundus forever in another interest (the author meaning an interest other than the service and exploitation of the fundus); such, for instance, as a purpose of utility to or ornamentation of the fundus. Therefore, perpetuity does not seem necessary except when the immobilization takes place in an interest other than the agricultural or industrial benefit of the fundus.'
"`"The same author, same work and volume (page 56) states the essentials of immobilization to be:
"`"`(1) That the movable was placed on a fundus, that is to say, an immovable *268 by nature (either land or a building); for the movable can only become an immovable by destination as being an accessory to the fundus. (2) That the movable was placed there in the interest of the fundus, that is to say, for its service, its exploitation, its utility or its ornament. (3) That it was placed there by the owner of the fundus. Immobilization by destination necessarily supposes the act of the owner. It could not result from the act of a lessee, a renter, or even an usufructuary. The reason is that immobilization by destination takes place in the interest of the fundus and the owner is the sole representative of that interest.'"'

* * * * * *
"The subject tank in the Holicer decision was as much detached from the dwelling as possible. It was distant from the building, and removable from the soil by lifting after unscrewing a nut. No more trouble is encountered than in the removal of a gas heater or Venetian blinds. It was not an accessory to the fundus. The house and the soil were untouched, and certainly left in the same condition as before it was placed on the premises.
"We think the tank, as were the Venetian blinds in Kelieher v. Gravois, supra, was for the service of the owner rather than in the interest of the fundus.
"In effect we said in the Holicer opinion immobilization does not presuppose the act of the owner of the movable. It is observed that Baudry-Lacantinerie, quoted above, says that immobilization necessarily supposes the act of an owner and that it cannot result from the act of a lessee, a renter or even a usufructuary. Art. 2726 of the LSA-Civil Code gives the lessee the right to remove the improvements and additions which he has made to the thing let, provided he leaves it in the state in which he received it. The article further says that if the additions have been made with lime and cement the lessor may retain them, on paying a fair price. A fortiori, it would seem where a third person owner has for accommodation rented or loaned a movable he should be permitted to remove it. We, therefore, are of the opinion that in order for immobilization to take place the owner of the fundus must have title to the movable which he dedicates to the interest of the fundus. See Buckley v. Lindsey Mercantile Company, Inc., 1927, 5 La. App. 467; Richardson v. Item Company, 1931, 172 La. 421, 134 So. 380, 381; Articles 468 and 469 of LSA-Civil Code.
"In Richardson v. Item Company, Judge Odom said, 172 La. 421, 134 So. at page 381,
"`Under the circumstances disclosed, the contention is not well founded. The sprinkler system was not an immovable by destination. Immovables by destination are things which are placed upon or attached to the realty by the owner, not by a third person, for its service and improvement. Civ.Code, art. 468.
"`A movable becomes an immovable by destination when the owner unites it with lands, tenements, or buildings which are also owned by him, with the intention that the movable shall henceforth be merged and associated with the destiny of the realty. For a movable to become an immovable by destination it must necessarily be placed upon or attached to the immovable by the owner himself. When such things are placed upon an immovable by a lessee as an improvement or addition, they remain movables, and may be carried away by him unless attached with lime and cement.
"`It has twice been held by this court that a railroad laid upon the soil of another is a movable. In the case of State v. Mexican Gulf Railway Co., 3 Rob. 513, the court said: "But the Railway is not an immovable, either by nature or destination, if the soil over which it is laid belongs to another. The rails, therefore, did not become immovable by being laid down."
"`In Woodward v. [American Exposition] Railway Co., 39 La.Ann. 566, 2 So. *269 413, 414, the court said: "As the railroad was constructed on the soil of another, it was movable property, and as such governed by the law regulating pledges on movables."
"`Counsel likens this sprinkler system to wire screens, water, gas, sewerage, and heating pipes, radiators and the like mentioned in article 467 of the Civil Code, as amended by Act No. 51 of 1912, and cites, in support of his contention that it could not be lawfully removed from the premises, the case of Scott v. Brennan, 161 La. 1017, 109 So. 822, 48 A.L.R. 1143.
"`Neither the article of the Code nor the case cited has any bearing upon the issue involved in the case at bar. The article of the Code provides that wire screens, pipes, radiators, bathtubs, and the like "when actually connected with or attached to the building by the owner for the use or convenience of the building are immovable by their nature."' (Italics ours.)
"A further exception to the accession of another's property by operation of law may arise under Article 504 of the LSA-Civil Code which says all that which becomes united to or incorporated with the property, belongs to the owner of such property, subject to certain stated rules. One of these is Article 508, which provides:
"`When plantations, constructions and works have been made by a third person, and with such person's own materials, the owner of the soil has a right to keep them or to compel this person to take away or demolish the same.
"`If the owner requires the demolition of such works, they shall be demolished at the expense of the person who erected them, without any compensation; such person may even be sentenced to pay damages, if the case require [sic] it, for the prejudice which the owner of the soil may have sustained.
"`If the owner keeps the works, he owes to the owner of the materials nothing but the reimbursement of their value and of the price of workmanship, without any regard to the greater or less value which the soil may have acquired thereby.
"`Nevertheless, if the plantations, edifices or works have been made by a third person evicted, but not sentenced to make restitution of the fruits, because such person possessed bona fide, the owner shall not have a right to demand the demolition of the works, plantations or edifices, but he shall have his choice either to reimburse the value of the materials and the price of workmanship, or to reimburse a sum equal to the enhanced value of the soil.'
"An incident to the last paragraph of the above Codal article is that the owner of the real estate shall elect whether he will keep the useful improvement and reimburse the value thereof, or if he fails or refuses to take this action the third person may, if practicable, remove his property. Conceding arguendo the improvement has become immobilized can Edwards retain it without paying its value? We think not because Article 508 in such an instance contemplates the owner of the property shall not receive title to the thing immobilized until he gives compensation. Certainly it cannot be said that Edwards acquired title because until Gray or Edwards elected to keep the property the title under Article 508 remained in the third person. Gray, having no title, passed none to Edwards and Edwards, having not elected to become the owner of the tank before it was removed, acquired no title. We think, therefore, defendant was within its rights in removing the tank.
"In Folse v. Loreauville Sugar Factory, Inc., 1934, 156 So. 667, 670, Judge LeBlanc, as the author of the opinion, said:
"`Another important feature, however, which differentiates this case from that of Monroe Automobile & Supply Co. v. Cole, supra [6 La.App. 337], lies in the fact that the improvements in the latter case were placed on the property by the owner, *270 whereas here they were placed by third persons on the property of another. Therefore it cannot even be contended (which defendants, however, do not) that the improvements have become immovables by destination, because under article 468, R.C.C., things become immobilized by destination only when placed on a tract of land for its service and improvement, by the owner himself, or when he (the owner) has attached them permanently to the tenement or to the building.'
"This decision being in conflict with Holicer Gas Company, Inc. v. Wilson, the latter is overruled." (Emphasis supplied.)
73 So.2d 590, 592-595.
It may be noted that the author of the opinion in the Holicer case, the late and lamented George W. Hardy, Jr., dissented in the Edwards case, but nevertheless subsequently recognized the correctness of the majority holding. For instance, in State, Department of Highways v. Thompson, 188 So.2d 753, 756 (1966), as the author of the opinion, he stated:
"The distinction with reference to owners was pointed out in the majority opinion of this court in Edwards v. S. & R. Gas Company, Inc. (La.App. 2nd Cir., 1954), 73 So.2d 590. The opinion in the cited case enumerated the elements requisite to an immovable by destination as being: (1) an accessory to the property; (2) employed in the service of such property; and (3) placed thereon by one who owned both the property and the accessory." (Emphasis supplied.)
Under LSA-C.C. Art. 508, as explained in the Edwards case, Mrs. Sandy, having no title to the fence to convey to plaintiff, Bailey, and neither Mrs. Sandy nor Bailey having elected to become owner of the fence before it was removed, neither she nor he acquired right or title thereto. Therefore, defendant was within his rights in removing the fence of which he remained the owner.

ON REHEARING
Before AYRES, BOLIN, PRICE, HEARD and HALL, JJ.
PRICE, Judge.
We granted a rehearing in this matter to reexamine our decision that the rural pasture fence involved herein is an immovable by nature. There are apparently no prior appellate cases directly in point on this question.
The Court sitting en banc has given thorough study to the arguments presented on rehearing and has concluded that the fence involved in this case is an immovable by nature for the reasons set forth in the original opinion. As pointed out in that opinion, the fence falls within the meaning of "other constructions" as provided in La.C.C. Article 464.
Whether the construction was made by someone other than the owner is immaterial under the provisions of Article 464 and the jurisprudence interpreting this article. For this reason, we do not agree with the argument advanced in the dissent to the original opinion suggesting that Edwards v. S. & R. Gas Co., 73 So.2d 590 (La.App. 2d Cir. 1954) involving an interpretation of La.C.C. Articles 467 and 468 is apposite to the issue presented herein.
Our attention has also been called to La.C.C. Article 2726 and its possible effect on this case. This article provides:
"Art. 2726 Improvements and additions made by lessee, removal or compensation
The lessee has a right to remove the improvements and additions which he has made to the thing let, provided he leaves it in the state in which he received it.
But if these additions be made with lime and cement, the lessor may retain them, on paying a fair price."
*271 We do not think the provisions of this article should be applied to the facts of this case. In the absence of a recorded lease, after the land has been sold by the lessor to a third person the lessee has no right to remove an improvement that is classified as an immovable by nature even though the lease provided that the lessee could remove the improvement at the termination of the lease. Vaughn v. Kemp, 4 La.App. 682, 2d Cir. 1926; La.C.C. Article 2266; Yiannopoulos, Louisiana Practice Civil Law of Property, Section 48, page 147 (1966).
For the reasons assigned, our original judgment is reinstated.