315 So.2d 842 (1975)
Luther BENOIT, Plaintiff-Appellee,
v.
ACADIA FUEL & OIL DISTRIBUTORS, INC., Defendant-Appellee.
GULF OIL CORPORATION, Defendant-Third-Party Plaintiff-Appellant,
v.
W. J. CLEVELAND, Third-Party Defendant-Appellee.
No. 5041.
Court of Appeal of Louisiana, Third Circuit.
July 3, 1975.
Rehearing Denied July 24, 1975.
Writ Refused September 26, 1975.
*843 Davidson, Meaux, Onebane & Donohoe, by James R. Lewis, Lafayette, for defendant-appellant.
Reggie & Harrington, by Oscar W. Boswell, II, Crowley, for 3rd party defendant-appellee.
Pugh, Buatt, Landry & Pugh, by H. Wayland Vincent, Crowley, for plaintiff-appellee.
Noble M. Chambers, Jr. of Aaron, Aaron & Chambers, Crowley, for defendant-appellee.
Before FRUGE, MILLER and DOMENGEAUX, JJ.
DOMENGEAUX, Judge.
Plaintiff brought this suit to recover damages for the alleged wrongful removal by the defendants of an H-frame lift, air compressor, and three electric gasoline pumps from a service station located on his property. The damages sought by plaintiff included, among other things, the replacement cost of the items removed. The defendants subsequently answered, denying liability, with Gulf Oil Corporation also filing a third party action against William *844 J. Cleveland (former owner of the property on which the service station is located). Following a trial on the merits, the district court rendered judgment in plaintiff's favor against the defendantGulf Oil Corporation, awarding damages of $1,744.00 as the value of the abovementioned lift and air compressor. Plaintiff's other demands were denied, as well as Gulf's third party action against William J. Cleveland. Only the defendant, Gulf Oil Corporation, has appealed. The other parties involved in the suit neither appealed nor answered the appeal.
The facts leading up to this suit are as follows: W. J. Cleveland was the owner of two adjacent lots within the city limits of Crowley, Louisiana. In 1950 or 1951 Cleveland had a service station built on one of these lots. Included in the equipment installed at the time of construction were the following items: an air-driven lift, an air compressor used to operate the lift, and three underground gasoline storage tanks. These articles were the property of Gulf Oil Corporation. Representatives of Gulf also subsequently installed three electric gas pumps. The record is unclear as to what arrangement the oil company had at this early date with Cleveland or any lessees insofar as the use of the equipment was concerned.
Evidence does reflect, however, that in 1969 Gulf executed form agreements with each of its station operators when the oil company had equipment on the respective premises. A like agreement would subsequently be drawn up with a new operator. Provided in said agreement was also an "Owner's Consent" under which the landowner (if different from the operator) consented to the installation of the equipment on his property and further agreed that he would never assert title to the property, that the agreement would survive the present occupier's occupancy until he gave Gulf ten days written notice to remove the equipment, and that Gulf had the right to remove their property at any time as provided in the agreement and lease.
In 1969 the station was leased by Cleveland, under an oral agreement, to C. G. Hulsey, d/b/a Acadia Fuel and Oil Distributors, Inc., the local distributor for Gulf Oil products. In August, 1969, Hulsey agreed with one Merel Spell that the latter would operate the station. In turn Gulf entered into one of the aforesaid agreements with the operator and Cleveland, the landowner signing same on November 19, 1970. Prior to this suit, one Dalton Hanks replaced Spell as the station operator.
In May, 1972, Gulf replaced the aforementioned air-driven lift with an H-frame hydraulic lift.
On July 19, 1973, the plaintiff, Luther Benoit, purchased from Cleveland the lot on which the service station was located, "together with all buildings and improvements situated thereon". On or about August 1, 1973, the plaintiff sent notice to Acadia Fuel, through an attorney, to vacate the premises as of September 1, 1973. On August 19, 1973, Gulf deeded the three underground storage tanks to the plaintiff. Subsequently, during the week of August 23-30, Gulf hired a contractor to remove from the station the three gas pumps, hydraulic lift, and air compressor, in addition to a number of signs and lights.
This suit followed. The defendant Acadia Fuel answered denying that it had anything to do with removal of the property in question. The defendantGulf Oil also denied liability alleging that the property was its own and that it had authority to remove same. Alternatively, it filed a third party action against Cleveland alleging the landowner did not comply with the ten days written notice, as provided in the aforementioned "Owner"s Consent" agreement, in order that it could remove its property before the sale of same to the plaintiff, and as a result was liable for any damages which Gulf might be held liable. Gulf further contended Cleveland was liable under Civil Code Article 508 and the theory of unjust enrichment.
*845 Subsequent to trial the district judge, in transcribed oral reasons, concluded that under Louisiana Civil Code Article 464 the hydraulic lift was an immovable by nature and as a result transferred in the act of sale by the inclusion therein of the wording "together with all buildings and improvements situated thereon". He further held that the air compressor was also transferred since it was an integral part of the operation of the hydraulic lift. The court assessed a value of $1,744.00 for the two items (the figure used by the defendantGulf in its answer,[1] representing the value of the property and the price of workmanship for installing same). The court further concluded plaintiff had no interest in the three gas pumps and failed to show other damages allegedly sustained. In respect to Gulf's third party demand against Cleveland, the judge held that Cleveland was not bound by the agreement signed on September 19, 1970, since the instrument provided that Gulf promised to furnish and to install the equipment, i.e. in the future, while in fact the compressor had been placed on the property some twenty years before, and the H-frame hydraulic lift in question two years after, this agreement. He further held inapplicable Civil Code Article 508 since Cleveland was not owner of the land in question at the time of suit or at trial.
DefendantGulf Oil appeals assigning as error essentially the following actions of the trial court: (1) In not considering parol evidence to show the plaintiff had knowledge that the items in question actually belonged to Gulf and had no intention to acquire title thereto; (2) In holding that the lift and air compressor were immovables by nature; (3) In failing to give force to the "Owner's Consent" agreement; (4) In failing to apply Civil Code Article 508; (5) In failing to hold that Cleveland had wrongfully converted Gulf property by selling it to the plaintiff and had unjustly enriched himself in so doing.
The initial question to be determined on appeal is the status of both the hydraulic lift and air compressor.
If in fact the items are "immovable by nature" the plaintiff acquired clear title to them by virtue of their legal "accession" to the property. Louisiana Civil Code Articles 498, 504. American Creosote Company, Inc. v. Springer, 257 La. 116, 241 So.2d 510 (1970).
This is despite any knowledge on the part of the plaintiff that the equipment actually belonged to Gulf rather than his predecessor in title, W. J. Cleveland. For it is clear under our jurisprudence that the purchaser is entitled to rely on the public records and is not bound or barred by unrecorded claims against the property. Herein, although an agreement existed between the former landowner and Gulf, showing the true ownership of the property in question, the plaintiff was neither a party to that transaction nor was it recorded.[2] As a result it has no effect on plaintiff's title. Louisiana Civil Code Article 2266, American Creosote Company, Inc. v. Springer, supra; Westwego Canal & Terminal Co., Inc. v. Pizanie, 174 La. 1068, 142 So. 691 (1932); McDuffie v. Walker, 125 La. 152, 51 So. 100 (1909); Industrial Outdoor Displays v. Reuter, 162 So.2d 160 (La.App. 4th Cir. 1964), writ refused 246 La. 348, 164 So.2d 352 (1964).
As a result, it is of no consequence whether or not parol evidence was allowed to show that plaintiff allegedly knew of the true ownership of the equipment prior to the sale of the property.

*846 STATUS OF THE HYDRAULIC LIFT

At the outset we will consider the question of whether the hydraulic lift was an immovable by nature. Civil Code Article 464 provides that: "Lands and buildings or other constructions, whether they have their foundations in the soil or not, are immovable by their nature."
Immovability by nature has been characterized as a creation of the law based on practical considerations and on inherent characteristics of the things concerned. What is a building or other construction qualifying as an immovable under Article 464 is left for judicial determination according to prevailing notions and society. Bailey v. Kruithoff, 280 So.2d 262 (La.App. 2nd Cir. 1973); Yiannopoulos, Louisiana Civil Law Treatise, Vol. 2, Property, Sections 42, 45, 48.
Plaintiff contends the hydraulic lift should be considered an "other construction" within the meaning of Article 464. We agree. The jurisprudence of this state has in the past found "other constructions" to include a cistern,[3] a corn mill,[4] a gas tank,[5] a barbed wire fence,[6] an outdoor advertising sign,[7] and a railroad track.[8]
Three criteria that are often mentioned in decisions by our courts, when faced with the question of what is an "other construction" within the meaning of Article 464, and therefore immovable by nature, are (1) size of the structure, (2) a certain degree of integration or attachment to the soil, and (3) some degree of permanency. Bailey v. Kruithoff, supra. See also Yiannopoulos, "Railroad Tracks as Immovables by Nature, Ruminations on American Creosote Company v. Springer", 19 La. Bar J. 37, 40 (June, 1971).
In the present case the original air-driven lift, as well as the replacement hydraulic lift, were imbedded in concrete. Testimony indicates that a hole (approximately eight feet in depth) was first dug, and about a foot of concrete placed in the bottom as "padding". Thereafter the lift was inserted in the hole, with six or so feet of dirt placed around it, and four inches of concrete poured at the top of the lift, level with the floor. In order to remove the lift the concrete had to be broken and the lift pulled out of the ground.
Thus, both the requirement of permanency and some degree of integration or attachment to the soil is met. Accordingly we conclude the lift was an immovable by nature as an "other construction" under Civil Code Article 464.

STATUS OF THE AIR COMPRESSOR
The next issue raised is whether the air compressor also is an immovable. Plaintiff-appellee contends the object is a component part of the immovable lift and therefore likewise immovable by nature. The trial judge agreed with this contention and so held. Appellee further alleges that the compressor can be classified as an immovable by nature under Civil Code Article 467. We disagree with both contentions.
Our jurisprudence recognized in Industrial Outdoor Displays v. Reuter, supra, the principle that component parts of "other constructions" under Civil Code Article 464 are also immovable. In Industrial Outdoor Displays the court concluded that *847 sign faces and other equipment (including electrical apparatus and time clocks, which were attached to concrete-imbedded, steel "H" beams, making up an outdoor display sign) were component parts of the object in question since if they were removed the object would be destroyed or rendered useless. They analogized same to a door of a house.[9]
In the present case the air compressor was bolted to several boards which in turn sat on, i.e. not bolted or attached to, the concrete floor of the filling station. The only connection from the compressor to the lift was a 3/8 or ½ inch pipe transmitting the air to the hydraulic lift. To disconnect same it was only necessary to unscrew the pipe union and remove the piece of equipment.
Although we readily agree that the hydraulic lift cannot be operated without the use of the air compressor, we, nevertheless, conclude that it is not a component part of the lift. Certainly it does not meet the "size, integration, and permanency" tests which our jurisprudence has used as criteria for determining whether an "other construction" can be classified as immovable by nature under Article 464. Primarily, however, practical considerations dictate holding same to be movable. Using only the test "that the `other construction' could not be operated without the questioned object" could lead to consequences, beyond the bounds of reason.
Likewise, the air compressor cannot be considered immovable by nature by reason of it being a component part of a building under Civil Code Article 467. The Article clearly requires that the object be "connected with or attached to the building by the owner . . . ." Richardson v. Item Co., 172 La. 421, 134 So. 380 (1931); Edwards v. S. & R. Gas Co., 73 So.2d 590 (La.App. 2nd Cir. 1954); Yiannopoulos, Louisiana Civil Law Treatise, Vol. 2, Property, Section 47. There is no question herein but that Gulf, rather than the owner of the station, W. J. Cleveland, placed the compressor on the premises.
Accordingly, the judgment of the trial court should be reversed in this particular.

THIRD PARTY DEMAND AGAINST W. J. CLEVELAND
The next issue raised is whether W. J. Cleveland is liable[10] to Gulf Oil for the amount awarded because of the wrongful removal of the hydraulic lift, by reason of the abovementioned "Owner's Consent" agreement, Civil Code Article 508, or otherwise.
We find Civil Code Article 508 applicable to the facts of this case, and as a result need not consider the various other arguments asserted in this regard. See: Prevot v. Courtney, 241 La. 313, 129 So.2d 1 (1961); Cloud v. Cloud, 145 So.2d 331 (La.App. 3rd Cir. 1962), cert. denied December 10, 1962; Comments, 28 L.L.Rev. 584 (1968).
Civil Code Article 508 provides in pertinent part:
"When plantations, constructions and works have been made by a third person, and with such person's own materials, the owner of the soil has a right to keep them or to compel this person to take away or demolish the same.

*848 . . . . . .
If the owner keeps the works, he owes to the owner of the materials nothing but the reimbursement of their value and of the price of workmanship, without any regard to the greater or less value which the soil may have acquired thereby."
We conclude that under the law W. J. Cleveland is deemed to have elected to keep the immovable lift at the time he sold his property to plaintiff "with all buildings and improvements situated thereon", without either indicating in the act of sale that same was not conveyed therein, or giving Gulf notice to remove same prior to the sale. Blocker v. Mizell, 202 So.2d 357 (La.App. 1st Cir. 1967), writ refused 251 La. 230, 203 So.2d 559 (1967). As a result, Gulf is entitled to reimbursement of the "value and of the price of workmanship" of the lift. The fact that Cleveland was not owner of the land at the time of trial, i.e. the reason given by the trial judge for disregarding the codal provision, has no effect upon the application of Civil Code Article 508. The time in question is the time of the sale of land from Cleveland to the plaintiff.

VALUE OF WRONGFULLY REMOVED LIFT
The next question raised is the value of the lift which is to be assessed as damages against Gulf Oil, in favor of the plaintiff herein, for its wrongful removal, and in turn to be assessed against W. J. Cleveland, in favor of Gulf on the latter's third party demand. As aforementioned, the lift in question was installed in May, 1972, only fifteen months before its removal by Gulf in August, 1973. It was stipulated by counsel for plaintiff and Gulf Oil that the replacement value of the lift amounted to $1,644.30. Considering the object in question and the practicality of obtaining and installing a similiar aged lift, we conclude that this latter amount is the measure of damages sustained by the plaintiff, that is, he had to replace the wrongfully removed lift in order to operate the station.
For the above and foregoing reasons the judgment of the trial court is reversed in regard to the air compressor, and it is hereby ordered, adjudged, and decreed that the same is a movable and thereby rightfully removed from the premises by its owner, Gulf Oil. Further, the judgment is hereby amended so as to award the plaintiff the sum of $1,644.30 (i.e. the replacement value of the lift) to be paid by the defendantGulf Oil Corporation. The judgment is further reversed insofar as Gulf's third party demand is concerned and it is hereby ordered, adjudged, and decreed that same be granted against the Estate of William J. Cleveland, in the sum of $1,644.30. In all other respects the judgment of the trial court is affirmed. Costs at trial and on appeal are assessed in equal portions to the defendant, Gulf Oil Corporation, and the third party defendant (now substituted)the Estate of William J. Cleveland.
Affirmed in part, amended in part, reversed in part, and rendered.
FRUGE, J., dissents in part, concurs in part with written reasons.
FRUGE, Judge (dissenting in part and concurring in part).
I respectfully dissent from the portion of the decree which finds the third party defendant, the estate of William J. Cleveland, liable. In my opinion the trial court was correct in denying the third party demand. In all other respects I concur in the decree.
NOTES
[1] The answer was subsequently amended claiming the sum of $3,600.00 as the value of the two items, plus installation.
[2] As pointed out in American, Creosote Company, Inc. v. Springer, 257 La. 116, 241 So. 2d 510, 515 (1970), recordation of the instrument would have protected the oil company herein.
[3] Pohlman v. De Bouchel, 32 La.Ann. 1158 (1880).
[4] Bigler v. Brashear, 11 Rob. 484 (1845).
[5] Monroe Auto & Supply Co. v. Cole, 6 La.App. 337 (La.App. 2nd Cir. 1927).
[6] Bailey v. Kruithoff, 280 So.2d 262 (La.App. 2nd Cir. 1973).
[7] Industrial Outdoor Displays v. Reuter, 162 So.2d 160 (La.App. 4th Cir. 1964), writ refused 246 La. 348, 164 So.2d 352 (1964).
[8] American Creosote Company, Inc. v. Springer, 257 La. 116, 241 So.2d 510 (1970).
[9] Under the jurisprudence as it now stands, with the holding in Industrial Outdoor Displays to the effect that component parts of an "other construction" (and therefore an immovable by nature) under Civil Code Article 464 need not be placed on the property by the owner thereof, there seems to be an obvious lack of congruity insofar as Civil Code Article 467 is concerned. For a component part of a building, the latter being considered an immovable by nature under Article 464, must be, among other things, "connected with or attached to the building by the owner" (emphasis added) according to Article 467.
[10] Subsequent to trial the Estate of William J. Cleveland was substituted as Third Party Defendant in lieu of William J. Cleveland, now deceased.